# LEHIGH ZINC AND IRON COMPANY *v.* BAMFORD.

ERROR TO THE CIRCUIT COURT OF THE UNITED STATES FOR THE
SOUTHERN DISTRICT OF NEW YORK.

No. 8. Argued October 20, 1893. — Decided December 18, 1893.

The owners of a mine leased it to parties who agreed to pay certain royal-
ties upon its products. The lease contained a further provision that " in
case the royalty due and payable to the parties of the first part accord-
ing to the above rates shall in any year fall below the sum of one thou-
sand dollars, then the party of the second part shall pay to the parties of
the first part such additional sum of money as shall make the royalty
for such year amount to the sum of one thousand dollars, which sum
shall be held and taken to be the royalty for that year : *Provided always,*
that if sufficient ores cannot be found to yield said minimum payment,
and said party of the second part shall in consequence thereof fail to
pay said minimum sum of one thousand dollars yearly, then said party
of the second part shall, if required by said parties of the first part,
relinquish this lease and the privileges hereby granted, and the same
shall cease thereupon." *Held,* that the lessees engaged to pay, as rent, in
each year, the royalties fixed in the lease ; and if, in any year, the
royalties fell below the sum of one thousand dollars, they were to make
up the deficit, so that the latter sum should, in any event, be paid an-
nually as rent.

A person who makes representations of material facts, assuming or intend-
ing to convey the impression that he has actual knowledge of the ex-
istence of such facts, when he is conscious that he has no such knowl-
edge, is as much responsible for the injurious consequences of such
representations to one who believes and acts upon them, as if he had
actual knowledge of their falsity.

Deceit may be predicated of a vendor or lessor who makes material, untrue
representations in respect to his own business or property, for the
purpose of their being acted upon, and which are in fact relied upon
by the purchaser or lessee, the truth of which representations the vendor
or lessor is bound, and must be presumed, to know.

General assertions by a vendor or lessor, that the property offered for sale
or to be leased is valuable or very valuable, although such assertions
turn out to be untrue, are not misrepresentations, amounting to deceit,
nor are they to be regarded as statements of existing facts, upon which
an action for deceit may be based, but rather as the expressions of
opinions or beliefs.

Fraud upon the part of a vendor or lessor, by means of representations of
existing material facts, is not established unless it appears that such

representations were made for the purpose of influencing the purchaser or lessee, and with knowledge that they were untrue; but where the rep resentations are material and are made by the vendor or lessor for the purpose of their being acted upon, and they relate to matters which he is bound to know, or is presumed to know, his actual knowledge of their being untrue is not essential.

THIS action was brought to recover certain rents alleged to be due under a written lease of May 2, 1883, between Charles and Edwin Bamford, of England, and the Lehigh Zinc and Iron Company, Limited, of Pennsylvania. The company acquired by the terms of the agreement the exclusive right for ten years to mine, dig, raise, crush, concentrate, roast, use and remove, sell and dispose of, all metals and minerals found or to be found upon the leased premises.

The lease contained, among other provisions, the following :

"Second. That the party of the second part, for and in consideration of the rights and privileges thus granted, hereto covenant and agree to pay to the said parties of the first part the following rents, profits and tonnage due, to wit : Upon all concentrated ores removed from or used upon the premises, the same having been obtained by crushing, sizing, washing, jigging, or separating ores mined upon said premises, a royalty of one dollar and fifty cents per ton of two thousand pounds (2000 lbs.) ; upon all concentrated ores which may be obtained by crushing, sizing, washing, jigging, or separating ores or minerals hauled and brought to the said premises from other estates and mines, a royalty for the use of the soil, buildings, machinery, and fixtures hereby leased shall be paid to the parties of the first part as follows, viz : During two days of each week a royalty of fifty cents per ton of two thousand pounds of such ore so concentrated when removed from or used upon the premises aforesaid, and during the remaining five days of each week a royalty of one dollar for each ton of two thousand pounds so concentrated when removed from the premises.

"Third. Upon all ores mined upon and removed from the premises other than those above mentioned a royalty of one dollar and fifty cents a ton shall be paid to the parties of the first part; and it is also covenanted and agreed that the said

party of the second part shall put all the engines, boilers, and machinery which it shall use in good and substantial repair, and keep and leave them in the same good order, ordinary wear and tear excepted."

"Fifth. That the party of the second part shall pay or cause to be paid to the parties of the first part or their duly authorized agent or attorney at New York city on the twentieth days of January, April, July, and October of each year all sums of money found to be due by said party of the second part for ores removed during the three full calendar months next preceding, and shall accompany each remittance with a detailed statement of weights and amounts so accruing, specifying also whence such ores were originally obtained.

"Sixth. In case the royalty due and payable to the parties of the first part according to the above rates shall in any year fall below the sum of one thousand dollars, then the party of the second part shall pay to the parties of the first part such additional sum of money as shall make the royalty for such year amount to the sum of one thousand dollars, which sum shall be held and taken to be the royalty of that year : *Provided always*, That if sufficient ores cannot be found to yield said minimum payment, and said party of the second part shall in consequence thereof fail to pay said minimum sum of one thousand dollars yearly, then said party of the second part shall, if required by said parties of the first part, relinquish this lease and the privileges hereby granted, and the same shall cease thereupon."

The company acquired by the agreement the exclusive right to purchase the leased estate, mining rights, etc., at the price of $125,000, payable according to certain named terms.

The complaint alleged that the company entered upon the leased premises and dug and carried away ores, but only in such quantities that at the agreed rates the royalties fell below $1000 in each of the years ending May 2, 1884, and May 2, 1885. Judgment was asked for $1000 for each of those years less the sum of $59.49, leaving a balance of $1940.51, with interest from May 2, 1884, on $940.51, and from May 2, 1885, on $1000.

The company denied all indebtedness to the plaintiffs, and asserted a counter claim for the sum of $8000. The answer alleged that Charles Bamford, for himself and Edwin Bamford, in order to induce the company to lease the property, represented the mine to be a valuable ore-producing one; that, properly worked, it would yield, and had yielded, a large amount of zinc and other metals; that it was still a valuable mine for such purposes, and would be a source of profitable investment to the company; that when those statements and representations were made the mine was flooded to the extent of nearly one hundred feet, so that it was impossible for the company's officers, agents, and servants to make actual examination of it; that, relying upon and believing such statements and representations to be true, the defendant entered into the contract; that immediately after the execution of the lease the company, in consequence of the above representations and statements, purchased from the Bamfords a large quantity of tools, wagons, material, and personal property, to be used in developing the mine, paying therefor the sum of $883.74; and that the articles so purchased were of no use or value except for the purpose for which they were so purchased. The answer further alleged that in developing the mine the company expended, in addition to moneys for materials and for cleaning the mine, nearly $4000, the aggregate of all expenditures by it in that way being between $5500 and $6000; that its officers devoted their personal attention and labor to the business, the value of such services being at least $2500; that these expenditures were made in good faith and in reliance upon Bamford's statements as to the character of the mine; and that these representations, so made to induce, and which did induce, the company to enter into the lease, were entirely false, whereby it had sustained a loss of at least $8000.

By stipulation between the parties the plaintiffs had leave to amend and did amend the complaint, claiming judgment for the sum of $1000, with interest from May 1, 1886, for an additional instalment of minimum rent due May 1, 1886.

At the trial the plaintiffs read in evidence the written contract of lease and rested their case. The company then moved

to dismiss the complaint upon grounds set forth in writing. The court denied the motion, and to that ruling the defendants excepted.

The company introduced evidence tending to show that Charles Bamford, prior to the execution of the lease, made the representations stated in the answer and counter claim. The bill of exceptions states that the defendants in the latter part of 1883 ceased to work the mine and never resumed, and subsequently claimed that it was valueless for producing ores. The plaintiffs introduced evidence tending to show that the statements alleged to be made by Charles Bamford were in fact true; that the mine properly worked would be a valuable ore-producing one; that the plaintiffs made no statements about it; and that the company was acquainted with its character and relied upon their own knowledge, and not upon any statements by the plaintiffs. It appeared in evidence that the company entered into possession and used for several months the mines, buildings, machinery, and fixtures described in the schedule of the lease, which buildings and fixtures cost upwards of $60,000. It did not appear that any complaint of misrepresentation, failure, mistake, or disappointment was made until the answer was filed in this action about August, 1885.

There was a verdict in favor of the plaintiffs for $3201.58, for which sum judgment was rendered.

*Mr. Sidney Ward* for plaintiff in error.

I. It was error in the court to refuse defendant's motion to dismiss the complaint upon the close of the plaintiffs' case. The lease in question was a lease for ten years of a mine, situated at East Hempfield, in the county of Lancaster, in the State of Pennsylvania, under which the Lehigh Zinc and Iron Company, Limited, agreed to pay a royalty of $1.50 per ton. At the close of the plaintiffs' case, in the court below, the plaintiffs had failed to prove that any ore had been taken from the mine, with the exception of ores, the royalty on which amounted to $59.49, which fact appears from the allegation in the complaint, that the defendant had paid to the plaintiffs

the sum of $59.49 on account of royalties for ore taken out. The plaintiffs had elected, in making the lease in question, to provide that if the royalty did not amount to $1000 a year the plaintiffs should have the right to determine the lease. Now, it is submitted that it is clear from this provision that the true intent of this contract was, that if the ores mined were sufficient to produce a royalty of one thousand dollars a year, the mine should be worked and carried on by the defendant; otherwise, that the plaintiffs might at their option rescind the lease and the same be determined. The sixth clause reads as follows: "In case the royalty due and payable to the parties of the first part, according to the above rates, shall in any year fall below the sum of one thousand dollars, then the party of the second part shall pay to the parties of the first part such additional sum of money as shall make the royalty for such year amount to the sum of one thousand dollars, which sum shall be held and taken to be the royalty of that year: *Provided always*, That if sufficient ores cannot be found to yield said minimum payment, and said party of the second part shall in consequence thereof fail to pay said minimum sum of one thousand dollars yearly, then said party of the second part shall, if required by said parties of the first part, relinquish this lease and the privileges hereby granted, and the same shall cease thereupon."

This proviso after the italics, it is submitted, shows clearly what was the intention of both the parties to the contract, and that such intention was, that unless the ores which could be taken out should be of a sufficient amount to make a royalty of one thousand dollars, then the liability of the defendants under the same should cease. No other construction of this proviso will give it any force, for if it was not intended to have this construction, there would have been no occasion for its insertion at the end of the preceding sentence. That this was the actual intent of the party there is no question, and it is contended that this intention is fairly deducible from the fact of the insertion of this proviso at this point.

The position taken by defendant's counsel on the trial, that no action could be maintained by the plaintiffs in the court

below, for the one thousand dollars per year until the end of the term, is well taken, for the reason that, while it might not within one year have mined sufficient ore to produce a royalty of a thousand dollars, still the defendant was entitled, if the plaintiffs did not exercise their right to rescind the lease, to have the full term of ten years in which to mine the property and ascertain, if possible, whether the amount required to produce the minimum of royalty might not be obtained. In any event the plaintiffs could not recover on the entire contract more than the difference between the whole amount of the royalties during the entire term, and the sum of $10,000, even if they could recover this sum by reason of the failure of defendants to work the mine. This action was prematurely brought.

II. The defendant requested the court to charge that if as an inducement to defendant to enter into the lease Charles Bamford represented the mine to be well supplied with ore, and the defendant on the faith of such representation entered into said lease, and in fact there was not sufficient ore in said mine to be taken out in paying quantities, the plaintiffs could not recover and the defendant was entitled to recover its expenditures under this lease. It is submitted that the refusal of the court to charge as requested in this request is error, because the defendant, as has been suggested before, entered into this lease upon the statements and representations of Mr. Charles Bamford as to the condition of the mine. If, in point of fact, these statements were untrue, whether the statement was made wilfully or through ignorance, then the defendant, having gone on in reliance upon the statements of Charles Bamford, and having expended large sums of money and finding the mine to be worthless, was entitled to recover the expenditures which it had incurred in endeavoring to develop this mine.

*Mr. L. A. Fuller,* (with whom was *Mr. M. L. Towns* on the brief,) for defendants in error.

Mr. Justice Harlan, after stating the case, delivered the opinion of the court.

The defendants requested the court to charge the jury that the plaintiffs could not recover rent for any particular year, unless it appeared that the ores mined on the leased property in that year, were sufficient, on the basis of the royalties stipulated, to amount to one thousand dollars; and that unless enough ore was found to enable the company, giving proper care and attention, to prosecute the mining without loss, then the consideration, upon which its agreement was based, failed, and plaintiffs could not recover.   These propositions, embodied in specific requests for instructions to the jury, were rejected by the court.   The same propositions constituted the grounds upon which the company, at the close of the plaintiffs' evidence, asked the court to dismiss the complaint.   That motion and the specific requests for instructions were denied.   The action of the court in those respects is assigned for error.

In our opinion no error was committed by the court below. Looking at all the provisions of the lease, it is clear that the defendant engaged to pay, as rent, in each year, the royalties fixed in the lease; and if, in any year, the royalties fell below the sum of one thousand dollars, it was to make up the deficit, so that the latter sum should, in any event, be paid annually as rent.   The defendant took the chance of a failure to find ore in sufficient quantities to justify working the mines; and the plaintiffs took the chance of not obtaining more than one thousand dollars, annually, during the existence of the lease, for the use of buildings and fixtures that had cost them more than sixty thousand dollars.   To secure the payment, annually, of at least one thousand dollars, the right was reserved to the plaintiffs to terminate the lease, if the company failed, in any year, to pay that sum as rent.   And that the company might get the advantage of any developments indicating that the leased premises were of substantial value, the exclusive privilege was reserved to it of purchasing them at any time while the lease remained in force for the price of one hundred and twenty-five thousand dollars.   The rulings of the Circuit Court were in harmony with these views.

We are also of opinion that no error was committed in refusing the defendant's request for instructions upon the subject

of the alleged false representations. The charge, upon that issue, was very full and satisfactory. The court said, in substance, that a person who makes representations of material facts, assuming or intending to convey the impression that he has actual knowledge of the existence of such facts, when he is conscious that he has no such knowledge, is as much responsible for the injurious consequences of such representations, to one who believes and acts upon them, as if he had actual knowledge of their falsity ; that deceit may also be predicated of a vendor or lessor who makes material, untrue representations in respect to his own business or property, for the purpose of their being acted upon, and which are in fact relied upon by the purchaser or lessee, the truth of which representations the vendor or lessor is bound, and must be presumed, to know. Touching the alleged representations as to the value of the leased property, the court said that general assertions by a vendor or lessor, that the property offered for sale or to be leased is valuable or very valuable, although such assertions turn out to be untrue, are not misrepresentations, amounting to deceit, nor are they to be regarded as statements of existing facts, upon which an action for deceit may be based, but rather as the expressions of opinions or beliefs ; that, as a general rule, fraud upon the part of a vendor or lessor, by means of representations of existing material facts, is not established, unless it appears such representations were made for the purpose of influencing the purchaser or lessee, and with knowledge that they were untrue ; but where the representations are material and are made by the vendor or lessor for the purpose of their being acted upon, and they relate to matters which he is bound to know, or is presumed to know, his actual knowledge of them being untrue is not essential.

We perceive no objections to these instructions. They were sufficient for the guidance of the jury in respect to the alleged false representations by the plaintiffs.

*Judgment affirmed.*