**ROSENBERG v. HOWLE et al.**
No. 570.

Municipal Court of Appeals for the
District of Columbia.
Jan. 14, 1948.

James M. Earnest, of Washington, D. C., for appellant.

Byron G. Carson, of Washington, D. C. (Wilkes, McGarraghy & Artis, of Washington, D. C., on the brief), for appellees.

Before CAYTON, Chief Judge, and HOOD and CLAGETT, Associate Judges.

CLAGETT, Associate Judge.

The sole controversy between the parties to this action is whether certain representations made by a real estate salesman constituted actionable fraud or deceit. Plaintiff purchased improved real estate in January 1946 for $30,000 from defendant, Louise M. Howle, through the other defendant, Conner & Ryon, Inc., a real estate broker, representing the seller in the transaction. The basis of the claim of fraud is that a salesman for the broker induced plaintiff to purchase by representing that the premises involved had been converted from a residence to use as an office building, that such representation was false and that in order actually to convert for office use after purchasing the property plaintiff was compelled to install various fire proofing materials and appliances in accordance with the District of Columbia building code at a total cost of $1,800. Plaintiff sued to recover the amount of such cost, the trial court gave judgment for defendants, and plaintiff appeals.

It is undisputed that until just prior to the sale the premises had been used as a residence. It was sold subject to a two years' lease, which was shown to plaintiff and which had been negotiated by Conner & Ryon. The lease provided that the lessee would occupy the building "as an office or other first commercial." Attached to and made a part of such lease was an agreement that the lessor would make repairs and improvements consisting of 19 listed items and providing further that "the above work to be made in accordance with the

District of Columbia Building Code and satisfactory for first commercial use." At the time of the sale of the premises the lessee was using the building for offices.

It is undisputed too that several months after the sale to plaintiff and when he was negotiating to sell the building to another person an application for an "occupancy permit", required by District zoning regulations, was filed, that an inspection by a building inspector followed, and that then for the first time plaintiff learned that the building had not been converted for use as an office building in accordance with law. As a result of the inspection an order was issued requiring that the basement ceiling be covered with an approved type of fire protective material, that a second means of egress from all floors be installed, that an approved fire alarm system and emergency lighting be provided, the furnace be enclosed in masonry and that other similar changes be made, all in accordance with the building code for office buildings. The proof was likewise uncontradicted that all the changes ordered were covered by building regulations in effect at the time of the sale to plaintiff.

Plaintiff himself testified that he was a dentist and had never before bought or sold real estate and that he had read an advertisement of this property and had interviewed a salesman employed by the broker for the seller. The important part of his testimony relating to the alleged fraud was as follows: "He (the salesman) said he had a very good piece of commercial property, that it had just been converted to office use, first commercial, that it had been put in first class condition. There were a few matters that would be cleaned up with regard to the physical property. That the property was in excellent condition. Everything had been taken care of. That all I would have to do would be to collect the rents."

Plaintiff also testified that the salesman had told him the property was leased for two years at $300 a month and that it was being used by the tenant for "office use"; that he relied entirely on the statements of the salesman and that he would not have purchased the property had it not been for such representations; also that he did not know that the building had not been legally converted to office use until the tenant communicated with him and told him that a building inspector had visited the premises and had asked to see the occupancy permit.

This testimony of plaintiff was not denied by the salesman. Asked whether he had told plaintiff that the owner had recently converted the property from a residence to an office or first commercial building, the salesman said, "I might have told him that, yes, because it had." Asked whether he had told plaintiff that there was a tenant in possession using the premises as an office building and paying $300 a month, his reply was, "Well, I could have. I don't know. You get me there, because I don't recall that far back, see?" He then added, "I could have told him that."

This salesman negotiated the entire transaction for the owner, and there was no claim that any representation had been made by either of the two principal members of the brokerage corporation. The evidence was undisputed that before purchasing the property plaintiff had inspected it both inside and out on two or more occasions and had noted it was being used for offices.

At the conclusion of the trial the trial court, sitting without a jury, found that plaintiff had not carried the burden of proving that the sale had been induced by fraudulent representations.

█ The general rules of law governing such cases are clear. Generally actionable fraud is the concealment of a fact which should have been disclosed, or is the representation of the existence of a material fact which did not exist. That representation must be positively made knowing it to be false, or recklessly and positively made without knowledge of its truth. The party to whom the representation is made must not only be warranted in accepting it, but he must actually accept it, and, relying on its truth, act as contemplated by the party making it.[1]

---

[1] Baker v. Baker, 54 App.D.C. 214, 217, 296 F. 961.

We have no doubt that the statements of the salesman to plaintiff, taken in connection with the surrounding circumstances, constituted representations of fact rather than an expression of opinion or mere puffing. The principal representation was that the building "had just been converted to office use"; also that "everything had been taken care of"; also that all plaintiff would have to do "would be to collect the rents." Furthermore, plaintiff was shown the lease requiring that the lessee would occupy the building as an "office or other first commercial." He was shown too the list of changes which the seller had contracted to make for the benefit of the lessee, such list being accompanied by the written statement that the work was "to be made in accordance with the District of Columbia Building Code and satisfactory for first commercial use." Taken alone, the statement that the building had been converted to office use might mean only the use had been changed. Taken together, however, the representations unquestionably would indicate to any reasonable person that the building had already been physically changed so that it was ready for occupancy for office use without the making of any additional expenditures and that, as the salesman said, all the purchaser would have to do would be to collect the rents.

We have no doubt either that these representations were false. The use had been changed but such change was illegal. The repairs made had nothing to do with legal requirements for change to office or commercial use. "Everything" had not "been taken care of." The buyer had much more to do then "collect the rents." The District of Columbia zoning regulations effective July 1, 1945, and remaining in effect at the time of the sale provided (Sec. 20) in part as follows: "Hereafter, no person shall use any building, land or premises, or part thereof, for any purpose, except as a single-family dwelling, until the Inspector of Buildings shall, upon written application, have issued to such person a certificate of occupancy stating that such use complies with these regulations and that the building and premises complies with the requirements of these regulations and the building code for such use."

Such regulations were made pursuant to law, Code 1940, § 5—422, which imposed penalties for the erection, "conversion" or change in use of any building in violation of the regulations. None of the requirements of law had been met.

This leaves for consideration the question whether the misrepresentations were made under conditions such as to permit recovery by plaintiff in an action for fraud or deceit.

The subject of whether actual knowledge of the falsity of statements is necessary in order to permit recovery in actions for fraud or deceit has been discussed frequently with various conclusions by courts and text writers. A distinction often has been made between actions for rescission of the contract and actions for damages. Where the action is in the former category, there is no doubt but that the plaintiff may prevail even though the agent making the false representation thought his statement was true.[2] Where the case falls in the second category, that is, where it is not sought to rescind the contract but to recover damages, many of the states have enacted statutes authorizing recovery even though the misrepresentations were called "innocent". The Supreme Court has approved the rule that "where the representations were material, and are made by the vendor * * * for the purpose of their being acted upon, and they relate to matters which he is bound to know, or is presumed to know, his actual knowledge of them being untrue is not essential."[3]

The United States Circuit Court of Appeals for the Sixth Circuit has stated the principle as follows: "A party is guilty of fraud in negotiating a contract when he makes a false representation concerning the subject matter by means of which he puts the opposite party under mistake as to the terms of the bargain and whether a party

[2] Seek v. Harris, 76 U.S.App.D.C. 404, 132 F.2d 19; 5 Williston, Contracts (Rev.Ed.1937) § 1509.

[3] Lehigh Zinc & Iron Co. v. Bamford, 150 U.S. 665, 673, 14 S.Ct. 219, 221, 37 L.Ed. 1215; cf. Restatement, Torts § 526, comment (f).

misrepresenting a material fact knows it to be false or makes the assertion without knowing whether it is true or false is wholly immaterial, for the affirmation of what one does not know or believe to be true is equally in morals and law as unjustifiable as the affirmation of what is known positively to be false and even if a party innocently misrepresents a material fact by mistake, it is equally conclusive for it operates as a surprise and misrepresentation on the other party." [4]

In this jurisdiction the governing principle has been clarified in two comparatively recent cases. In Public Motor Service Inc., v. Standard Oil Co. of New Jersey, 69 App. D.C. 89, 91, 99 F.2d 124, 126, the United States Court of Appeals for the District of Columbia, speaking through Mr. Justice Stephens, said: "The rule is settled that in an action at law where the issue is fraud the party relying upon fraud must show that the misrepresentations asserted were made either with knowledge of their untruth or in reckless disregard of the truth." That case quoted from New York Title & Mortgage Co. v. Hutton, 63 App.D.C. 266, 71 F.2d 989, certiorari denied 293 U.S. 605, 55 S.Ct. 122, 79 L.Ed. 696, wherein the court, speaking through Mr. Justice (now Chief Justice) Groner, said at page 271 of 63 App.D.C., at page 994 of 71 F.2d: "The action here was deceit, and on such an issue misrepresentations believed to be true, though the result of ignorance or negligence, will not sustain the action. No doubt a false statement *recklessly* made without knowledge of its truth or falsity is actual fraud, but in that case there must be knowledge of the falsity, or *reckless* disregard of the truth, to justify saying the misrepresentation was fraudulent." (Italics supplied.)

The rule just announced was reiterated in Sovereign Pocohontas Co. v. Bond, 74 App.D.C. 175, 120 F.2d 39, 40, wherein the court speaking through Mr. Justice Edgerton added: "Where knowledge is possible, one who represents a mere belief as knowledge misrepresents a fact. 'Where a party represents a material fact to be true to his personal knowledge, as distinguished from belief or opinion, when he does not know whether it is true or not, and it is actually untrue, he is guilty of falsehood, even if he believes it to be true, and if the statement is thus made with the intention that it shall be acted upon by another, who does so act upon it to his injury, the result is actionable fraud.'" (Citing several cases including Lehigh Zinc & Iron Co. v. Bamford, 150 U. S. 665, 14 S.Ct. 219, 37 L.Ed. 1215.)·

■ Applying these rules to the instant case, we believe plaintiff made out a case of actionable fraud. Undoubtedly, the representations by the salesman were made to induce plaintiff to purchase the building and plaintiff did purchase the building to his injury; they were material; they were false; they were made not as a mere belief or opinion but positively; they were made under such circumstances and in such manner as to lead any reasonable person to believe the salesman knew what he was talking about. If they were not made with knowledge of their falsity they were, at the very least, made recklessly.

■ Ordinarily questions of fraud or deceit are for the determination of the trier of the facts; here there was no dispute as to the facts and only one inference could fairly be drawn from them. Under such circumstances the question becomes one for the application of the correct rules of law. We hold that an erroneous rule of law was applied here, and hence that the judgment of the trial court must be reversed.

Reversed and remanded for a new trial.

[4] Grand Trunk Western R. Co. v. H. W. Nelson Co., Inc., 6 Cir., 116 F.2d 823, 832.