**DANAHER et al. v. UNITED STATES.**

No. 14164.

United States Court of Appeals,
Eighth Circuit.

Nov. 10, 1950.

Hendrix Rowell, Pine Bluff, Ark., for appellants.

James T. Gooch, U. S. Atty., and G. D. Walker, Asst. U. S. Atty., Little Rock, Ark., for appellee.

Before SANBORN and THOMAS, Circuit Judges, and DEWEY, District Judge.

THOMAS, Circuit Judge.

This is a suit upon a life insurance policy issued by the United States of America to Sol N. Bloom. The defense was fraud in the procurement of the policy. At the conclusion of the evidence counsel for the government moved for a directed verdict. The motion was sustained and a judgment was entered on the merits dismissing the

case, from which judgment plaintiff appeals.

The application for the insurance was dated June 12, 1942, and the policy was issued on July 17, 1942. Bloom died November 6, 1943, of a heart disease. His mother, Sophie Rhine Bloom, was the named beneficiary. She made claim for the insurance and it was denied May 25, 1944. She died November 26, 1948; and Palmer Danaher, executor of her estate, brought this suit October 31, 1949.

A copy of the policy is attached to the complaint. In so far as material on the issue on appeal it provided: "This policy shall be incontestable from the date of issue * * * except for fraud * * *"

The issuance of the policy and the payment of premiums are admitted. The answer alleges that the policy was issued pursuant to the written application of the insured which contained, among others, the following questions, the answers to which "were false and known by the insured to be false and were made for the purpose of deceiving this defendant in a material matter with respect to the insurance contract * * *":

"18(c) Have you within the past five years had any disease of—Blood vessels *No* Heart *No* Bladder *No* Kidneys *No* * * *"

"18(d) If you have been treated for any of the above diseases, state approximately dates, duration, names of and addresses of attending physicians (No reply)

"20 Give all illness within the past five years together with names and addresses of physicians who treated you *None*

"22 To your knowledge have you any disease, disability, physical abnormality, or deformity, congenital or otherwise? *No*"

The application also contained the following question and answer: "23 Do you understand that the Government will rely on the truth of your answers in deciding whether to grant the insurance applied for? *Yes*"

The record shows that on January 11, 1944, in response to a request from the Director of Insurance of the Veterans Administration for information concerning the cause of death of the insured counsel for Sophie Rhine Bloom, the named beneficiary in the policy, forwarded a letter to the Veterans Administration dated January 10, 1944, addressed to counsel for the beneficiary, and signed by John S. Jenkins, M.D., reading:

"Inclosed find copy of Sol Bloom's hospital record.

"I treated him over a period of three years for valvular heart disease, hypertension and nephritis.

"I was sick during his last illness and Dr. Capel attended him the last week."

The enclosure reads: "Date admitted, November 5, 1943; date discharged, November 6, 1943, dead; physician, Capel; diagnosis, valvular heart disease; history, has had valvular heart disease for the past several years; general edema, now in very poor condition; treatment, medicinal, no response."

Dr. Capel testified that he wrote the foregoing entry in the hospital record, and that the diagnosis was his own, but that he learned the history of the case from a personal interview with Dr. Jenkins, the insured's family physician.

Upon the trial counsel for plaintiff introduced in evidence another letter from Dr. Jenkins dated February 10, 1944, addressed to the Veterans Administration, Washington, D.C., and reading:

"Re F.C.B. Bloom, Sol Nathan

"Gentlemen:

"In July, 1941, I saw Mr. Bloom with a non-compensating heart. Under rest and treatment, his heart regenerated until about ten days before his death, at which time I was sick in bed and he was treated by Dr. C. B. Capel, Pine Bluff, in his last illness.

"This statement is made from my ledger as to the date, otherwise from memory."

Dr. Jenkins died prior to the trial, but excerpts from his daily ledger were introduced in evidence showing the following charges and credits to Sol N. Bloom:

1941, Charges: Jan., $7.00; May, $3.00. Credits: April, $7.00; May, $3.00

1942, Charges: March, $3.10

1943, Charges: Feb., $3.00; March, $2.00, $3.00, $3.00

The motion for a directed verdict was based on the grounds that the uncontradicted evidence shows that the insured was treated by Dr. John S. Jenkins on at least three occasions in 1941 and on one occasion in 1942, prior to application for insurance; that he falsely stated in the application that he had not been treated by any doctor within five years; that the statement was false; that the false statement was material as a matter of law, as is the fact that the government relied upon it; and that the intent to deceive is implied upon the showing that the statements were false.

While admitting that the evidence set out above and relied upon as the basis for directing a verdict for defendant is uncontradicted in any way, plaintiff contends that never-the-less by reason of facts introduced in evidence the case should have been submitted to the jury.

The evidence relied upon by plaintiff consists of the testimony of Dr. B. D. Luck, Jr., who examined the insured for the insurance on June 12, 1942. Dr. Luck testified that he examined Sol N. Bloom and asked him questions at that time, aided him in filling out his application, and that he found no evidence of heart or kidney trouble.

Five other witnesses testified that they knew Bloom personally and that he worked continuously for some time before his application for insurance was made, and through July, 1943. A part of that time he worked for the sheriff as outside deputy collector of delinquent personal taxes. He then worked for a few months as bookkeeper for a business firm prior to his last illness. None of these witnesses knew that he suffered from heart or kidney diseases.

Only one assignment of error is presented for consideration on this appeal, namely, that the court erred in peremptorily directing a verdict for defendant.

■ The burden of showing grounds on which a judgment should be reversed rests on the appellant. Elias v. Clarke, 2 Cir., 143 F.2d 640, certiorari denied, 323 U.S. 778, 65 S.Ct. 191, 89 L.Ed. 622.

■ A federal court of appeals must assume that the judgment of a federal district court appealed from is a legally correct adjudication of the controversy. Chicago Great Western Ry. Co. v. Beecher, 8 Cir., 150 F.2d 394, 399, certiorari denied, 326 U.S. 781, 66 S.Ct. 339, 90 L.Ed. 473.

■ The evidence for the party against whom a verdict is directed must be accepted as true for the purpose of determining the correctness of the ruling; and if the evidence is of such character that reasonable men may reach different conclusions, the case should be submitted to the jury. Wharton v. Aetna Life Ins. Co., 8 Cir., 48 F.2d 37; Smails v. O'Malley, Collector, 8 Cir., 127 F.2d 410. And an applicant for insurance is not required to disclose the fact of consulting a physician for slight or temporary ailments such as an ordinary cold, inability to sleep, constipation, headache, or the like. Wharton v. Aetna Life Ins. Co., supra; Golightly v. New York Life Ins. Co., 8 Cir., 85 F.2d 122, 127.

■ It was conceded, and the court held, that the defense of fraud in procuring the policy was an affirmative defense which placed the burden of proof on the government. In order to sustain a directed verdict the record, therefore, must show that the government established by competent and undisputed evidence all the necessary elements of fraud, namely, "(1) a false representation (2) in reference to a material fact (3) made with knowledge of its falsity (4) and with the intent to deceive (5) with action taken in reliance upon the representation." Pence v. United States, 316 U.S. 332, 338, 62 S.Ct. 1080, 1083, 86 L.Ed. 1510; Mutual Life Ins. Co. v. Hilton-Green, 241 U.S. 613, 36 S.Ct. 676, 60 L.Ed. 1202; Jones v. United States, 8 Cir., 112 F.2d 282, 287.

■ That the insured's statement that he had not been ill nor consulted a physi-

cian within five years prior to the date of his application was false is without dispute in the record. Such representations in an application for insurance are "not evidence of their own veracity." Pence v. United States, supra. Such representations are material as a matter of law. Hesselberg v. Aetna Life Ins. Co., 8 Cir., 75 F.2d 490; Columbian Nat. Life Ins. Co. v. Rodgers, 10 Cir., 93 F.2d 740. And if knowingly false, proof of an actual conscious purpose to deceive is not necessary. Columbian Nat. Life Ins. Co. v. Rodgers, supra. That valvular heart disease, hypertension and nephritis, the diseases from which the insured suffered for two or three years prior to his death, are not merely "slight or temporary ailments such as an ordinary cold" etc., is evidenced not only by the undisputed testimony of Dr. Capel who testified at the trial, but also by the fact that these are the same maladies which caused the insured's death.

■ It is plaintiff's principal contention that the record fails to show that the insured's answers were knowingly false; that he may have supposed that he was suffering from some "slight or temporary ailments." It is not contended that he did not know that he had consulted Dr. Jenkins on several occasions within five years prior to June 12, 1942, the date of the application. The argument that Bloom may have thought the ailments for which he had consulted Dr. Jenkins were trivial is based upon conjecture only. But "An insurance company will be presumed to have acted in reliance on the truth of material representations." Columbian Nat. Life Ins. Co. v. Rodgers, 10 Cir., 93 F.2d 740, 742. In Lehigh Zinc & Iron Company v. Bamford, 150 U.S. 665, 673, 14 S.Ct. 219, 37 L.Ed. 1215, the Supreme Court approved an instruction in a fraud case in which the trial court said that "a person who makes representations of material facts, assuming or intending to convey the impression that he has actual knowledge of the existence of such facts, when he is conscious that he has no such knowledge, is as much responsible for the injurious consequences of such representations, to one who believes and acts upon them, as if he had

actual knowledge of their falsity. * * *" What Bloom may have thought is, therefore, immaterial.

■ There can be no doubt here that Bloom knew that his answers to the questions in his application were false. The court did not err in directing a verdict for the government.

Affirmed.