Marion Ferrill TUPPER, and Clara Tarbell Tupper, Plaintiffs,

v.

UNITED STATES of America, Defendant.

Civ. A. No. 1395-N.

United States District Court
M. D. Alabama, N. D.
Aug. 22, 1958.

Smith, Kilpatrick, Cody, Rogers & Mc-Clatchey, Atlanta, Ga., and Hill, Hill, Stovall & Carter, Montgomery, Ala., for plaintiffs.

Hartwell Davis, U. S. Atty., and Ralph M. Daughtry, Asst. U. S. Atty., Montgomery, Ala., for defendant.

JOHNSON, District Judge.

The above-styled cause, coming on to be heard, was submitted to the Court, without a jury, on the issues made up by the pleadings and proof. Upon consideration of the evidence, consisting of a written stipulation entered into by and between the parties, together with the several exhibits thereto, the written briefs and the oral arguments, this Court now proceeds to make and enter in this memorandum opinion the appropriate findings of fact and conclusions of law.

This action is brought by the plaintiffs as the named beneficiaries and is brought to recover from the United States of America the sum of $10,000, that amount representing the proceeds of National Service Life Insurance Policy No. V-407-99-91, which policy was issued by the United States upon the life of Brig. Gen. Tristram Tupper. Originally, a National Service Life Insurance policy was issued to Tristram Tupper in the principal amount of $10,000, effective March 1, 1942, while he was on duty with the United States Army. Upon the expiration of this policy in 1950, the insurance was renewed, as provided by law, for an additional five-year term, which term became effective March 1, 1950. Premiums on this policy, which is the one now being sued upon, were paid by Tristram Tupper until the policy lapsed because of the nonpayment of the premium which was due on February 1, 1952. The policy provides that the insured was to be allowed thirty-one days' grace for the payment of the delinquent premium after the due date for such premium, and that during the grace period the policy was to remain in full force and effect. This thirty-one day grace period expired March 3, 1952. Tristram Tupper was advised of the lapse of this insurance policy by letter from the Veterans Administration dated April 16, 1952, and was at that time furnished an application form for reinstatement. This application for reinstatement, dated April 26, 1952, was received by the Philadelphia Office of the Veterans Administration on April 30, 1952, in an envelope bearing a postmark of Atlanta, Georgia, April 28, 8:00 p. m., 1952. On the application for reinstatement, Tristram Tupper answered in the affirmative the following question: "Are you now in as good health as you were on the due date of the first premium in default?" On the same application he answered in the negative the following question: "Have you beeen ill or suffered or contracted any disease, injury, or infirmity, or been prevented by reason thereof from attending the usual occupation, or consulted a physician, surgeon, or other practitioner for medical advice or treatment at home, hospital, or elsewhere, in regard to your health since the lapse of this insurance?" In an appropriate space on the form Tristram Tupper inserted, "Regular physical checkup. Nothing physically wrong." The application for reinstatement also including the following:

"As a condition to the reinstatement of this insurance I certify that the answers to the following questions are complete and true to the best of my knowledge and belief. I understand that statements made by me in this application are relied upon in reinstating insurance; that any deception or false statement either by inference, omission, or otherwise, may result in cancellation of the insurance or in refusal to pay claim on the policy; * * *"

It is not disputed between the litigants in this case that Tristram Tupper while on active duty with the Armed Forces in the European Theater of operation suffered severe pain in the left lumbar region and along the left leg in November of 1944. When this pain persisted, he consulted several army physicians from time to time, and his condition was

diagnosed as sciatica and/or anemia. Various treatments were prescribed, from which Tupper found some relief, but the pains continued intermittently on up until he was separated from the service in October of 1945; and the pains continued intermittently on up until about February 10, 1952, at which time Tupper testified[1] that he consulted Dr. John R. Gill of Miles, Virginia, for treatment and examination. Tupper also stated in the records submitted to the Court that he consulted Dr. Gill on this first occasion because the pain in his back and leg had increased in severity. A second visit was made between February 10, 1952 and February 22, 1952—this latter date being the date of the third visit—for "general treatment and examination." On the third visit, Dr. Gill performed a rectal examination and discovered that Tupper's prostate gland was enlarged, nodular and fixed. Dr. Gill testified that he suspected that Tupper had cancer of the prostate gland, far advanced, with metastasis to the hip bone. There were no X-ray or laboratory facilities in Miles, Virginia, and Dr. Gill's diagnosis was therefore a tentative one. He did not inform Tupper of his diagnosis, but to put it in the same form that the insured put it in a letter dated March 19, 1954:

"My third and last visit to Dr. Gill was on February 22. He gave me another check-up, including a rectal examination—the first I had ever had. Again he assured me that my heart, lungs, kidneys and other vital organs were normal. *Also, he said my prostate gland was enlarged and that he believed that this was the cause of the pains in my back and leg. He told me to stop working so hard and advised a thorough examination at an early date.* I told him I expected to finish the work I was doing some time in March and proposed going to Atlanta for a business conference and a long vacation. He said, 'Have one of those good Emory Diagnosticians give you a thorough going over while you are in Atlanta * * *' There was nothing alarming in what Dr. Gill said or the way he said it. He did not tell me or indicate that there was anything serious in my condition. In fact, if an enlarged prostate was the cause of the pains I had suffered, intermittently, through the years, this condition must have existed since 1944 and consequently I had no feeling that it was of a serious nature." (Emphasis supplied.)

On February 2, 1954, after he had been advised by the doctors that he had a cancer of the prostate gland, which was far advanced, Tupper filed a claim for waiver of premiums. This claim was filed with the Philadelphia Veterans Administration District Office. Along with his claim, Tupper submitted his own statement and a statement from Dr. John R. Gill, Dr. Gill's statement revealing he had examined Tupper in February of 1952. With this claim for waiver of premiums was submitted a letter dated February 13, 1954, from Dr. Milton H. Freedman of Atlanta, Georgia, Dr. Freedman's statement reflecting that he examined Tupper on April 28, 1952.[2] In a letter dated February 24, 1954, the Veterans Administration advised Tupper that his visits to Dr. Gill and Dr. Freedman were contradictory to his representations on his application for reinstatement, which was dated April 26, 1952, which representations were to the effect that he had not been ill or consulted a physician, and he was requested to explain the discrepancy. Thereafter, on March 26, 1954, the In-

[1] The record submitted to the Court includes the deposition of Tristram Tupper taken in November of 1954, pursuant to an order of the United States District Court for the Northern District of Georgia, which deposition was taken approximately one month prior to the time he died.

[2] The same date the application for reinstatement was postmarked by the Atlanta, Georgia, Post Office.

surance Claims Division of the Veterans Administration District Office, Philadelphia, Pennsylvania, determined that because of the misrepresentation of material facts by Tristram Tupper on his reinstatement application dated April 26, 1952, which facts were relied upon by the Veterans Administration, the reinstatement which had been effected as of April 28, 1952, was contestable upon the ground of fraud and should be cancelled. National Service Life Insurance Policy No. V-407-99-91 was therefore cancelled. Tristram Tupper died on December 30, 1954, with cancer of the prostate, bones, liver and lungs, of ten years' duration. After the death of Tupper, a joint claim for the proceeds of the policy involved in this litigation was filed by these plaintiffs; one as the widow-beneficiary and one as the ex-wife-beneficiary. On March 7, 1955, the claims for said insurance proceeds were disallowed upon the ground of fraud of the insured in making his application for reinstatement. An appeal was taken by these plaintiffs to the Board of Veterans Appeals, and, after a hearing, that Board on April 6, 1956, rendered a decision holding that the reinstatement of the insurance policy now in question before this Court was contestable because of said fraudulent representations. These plaintiffs then commenced their action in this court, as provided by Title 38, §§ 817 and 445, United States Code Annotated, as amended, because one of the plaintiffs resides in this district. The sole question to be decided by this Court in this case is whether Tristram Tupper perpetrated a fraud in his application for reinstatement dated April 26, 1952, which was received by the Veterans Administration District Office, Philadelphia, Pennsylvania, on April 30, 1952. The United States, as authorized by sub-section 602(w) of the National Service Life Insurance Act of 1940, as amended, 38 U.S.C.A. § 802(w), interposes the defense of fraud. See McDaniel v. United States, 5 Cir., 196 F.2d 291. It is not disputed that the insur-

ance policy was reinstated by the Veterans Administration pursuant to Veterans Administration Regulation 3424, 38 C.F.R. 8.24, 1949 Edition, the pertinent portions reading as follows:

"The applicant for reinstatement for National Service Life Insurance during his lifetime and before becoming totally disabled must submit a written application signed by him and furnish evidence of health as required in 8.23 at the time of application satisfactory to the Administrator of Veterans Affairs and upon such forms as the Administrator shall prescribe or otherwise as he shall require. Applicant's own statement of comparative health may be accepted as proof of insurability for the purpose of reinstatement under 8.23(a), but, whenever deemed necessary in any such case by the Administrator, report of physical examination may be required * * *"

It is not disputed that the Veterans Administration, being the representatives of the insurance service which passed upon Tristram Tupper's reinstatement application, relied upon his representations set out in said application. In this connection, see United States v. Willoughby, 9 Cir., 250 F.2d 524, and United States v. Depew, 10 Cir., 100 F.2d 725.

■ In a case such as this one, with facts strikingly similar, the Supreme Court of the United States, in Pence v. United States, 1942, 316 U.S. 332–342, 62 S.Ct. 1080, 86 L.Ed. 1510, speaking through Mr. Justice Jackson, very clearly spelled out the necessary elements that a party setting up such a defense has the burden of proving. These elements are as follows: (1) A false representation (2) in reference to a material fact (3) made with knowledge of its falsity (4) and with the intent to deceive (5) with action taken in reliance upon the representation.[3]

3. The Pence case in this respect was based upon Claflin v. Commonwealth Fire Ins.

Co., 110 U.S. 81, 3 S.Ct. 507, 28 L.Ed. 76; Lehigh Zinc & Iron Co. v. Bamford,

■■ There was no purpose in requiring answers to the question, "Are you now in as good health as you were on the due date of the first premium in default?" and the question, "Have you been ill or suffered or contracted any disease, injury, or infirmity, or been prevented by reason thereof from attending the usual occupation, or *consulted a physician, surgeon, or other practitioner for medical advice or treatment at home, hospital, or elsewhere, in regard to your health* [emphasis supplied] since the lapse of this insurance?" except to secure information on which a proper determination could be made by the Veterans Administration as to whether or not Tristram Tupper met the requirements to secure a reinstatement of his lapsed policy. See United States v. Depew, supra. Tristram Tupper had a duty in filing this application for reinstatement to disclose fully and fairly and in good faith the three visits to Dr. Gill that occurred from February 10, 1952 to February 22, 1952. The conclusion is inevitable that Tristram Tupper knew of these visits, knew that he had been subjected to a rectal examination for the first time in his life, according to his own testimony, and knew that Dr. Gill advised him that he had an enlarged prostate gland, and knew that Dr. Gill advised him to go to a diagnostic hospital at an early date. The failure to disclose these matters, or at least the visits, so that the Veterans Administration could, if they desired, investigate the matter further prior to reinstating the insurance, was a violation of the good faith requirement and was not a full and fair disclosure. See United States v. Elliott, 5 Cir., 1934, 73 F.2d 374; also Jones v. United States, 5 Cir., 1939, 106 F.2d 888. Thus, it is quite apparent that the first element as set up by the Supreme Court in the Pence case, that is, a false representation, is certainly present in this case.

■ Since the question calling for Tupper to reveal any visits to physicians or surgeons in regard to his health was of vital importance—see Edwards v. United States, 6 Cir., 140 F.2d 526—his answer to that question in the negative was in reference to material facts. See Raives v. Raives, 2 Cir., 54 F.2d 267. Tupper's visits to Dr. Gill were not casual matters, and the information he received reflected that his ailment, that is, an enlarged prostate gland that necessitated the attention of specialists at a diagnostic hospital, was not a superficial ailment in a man approximately sixty years of age. Thus, the second element as set up by the Supreme Court, that is necessary for the Government in this case to prove, is present.

■ There is no evidence in this case that Tristram Tupper was anything other than a well educated and highly intelligent man. As has been previously stated by the Court in this opinion, Tupper knew that his answer "No" to the question concerning his visiting physicians and/or surgeons during the lapsed period was false. His volunteering the information in answer to another question, "Regular physical checkup. Nothing physically wrong," does not eliminate or even mitigate the falsity of the representation, the materiality of the representation, or his knowledge of his false answer. It was not a regular physical checkup, according to his own testimony. His pains were of more severity than usual; he discovered what he must have considered to be a serious ailment in a man of his age, and he could not have helped but been impressed by Dr. Gill's recommendation that he visit a "diagnostic hospital" at an early date. This Court is bound to conclude and does now conclude that he answered the question, which called for him to disclose his visits to physicians and surgeons in the negative, with intent to deceive. The fact that the Veterans Administration

150 U.S. 665, 14 S.Ct. 219, 37 L.Ed. 1215; Mutual Life Ins. Co. of New York

v. Hilton-Green, 241 U.S. 613, 36 S.Ct. 676, 60 L.Ed. 1202.

reinstated the policy solely upon Tristram Tupper's application for said reinstatement forces the conclusion that that action was taken in reliance upon false representations made by the applicant. Thus, the burden cast upon the Government by the Pence case has been fully and fairly met by evidence which, to this Court, is clear and convincing.

■ The defendant raises a question going to the jurisdiction of this Court. The theory defendant advances is that under the applicable statutes [4] no jurisdiction to settle disagreements between parties, such as the parties now before this Court, is conferred upon the courts unless there was a policy in full force and effect, that since the Administrator of the Veterans Affairs cancelled this policy it was not in "force and effect." The Government calls the Court's attention to Birge v. United States, D.C., 111 F.Supp. 685. It is the opinion and conclusion of this Court that the facts in that case make it inapplicable to the case at bar. This Court believes that an argument such as here advanced by the Government concerning the jurisdiction answers itself. Here the question that is presented is whether or not the cancellation of the policy by the Veterans Administration was justified. For this Court to follow the reasoning of the Government would require that it be initially held, without going into the merits of the case, that the cancellation of the policy in question was correct. Such is not the intent of the law.

In addition to the foregoing findings and conclusions, this Court now specifically concludes that it has jurisdiction to hear and determine this matter; that the application for reinstatement, dated April 26, 1952, made by the insured, Tristram Tupper, and received by the Philadelphia Office of the Veterans Administration on April 30, 1952, in an envelope bearing a postmark of Atlanta, Georgia, on April 28 at 8:00 p. m., 1952, contained false representations in reference to a material fact; that said false representations were made by the insured, Tristram Tupper, with knowledge of their falsity and with intent to deceive. This Court further specifically concludes that the United States of America, acting through the Veterans Administration, relied upon said representations when it reinstated National Service Life Insurance Policy No. V–407–99–91. It therefore follows that the decision of the Disability Insurance Claims Division of the Veterans Administration of March 26, 1954 and the decision of the Board of Veterans Appeals of April 6, 1956, each holding that the reinstatement of the insurance was contestable upon the ground of fraud, were correct.

Formal judgment in accordance with the foregoing findings and conclusions will be made and entered.

---

4. Sections 445 and 817 of Title 38 U.S.C.A.