**U. S. HEALTH CLUB, INC., Plaintiff,**

v.

**William MAJOR, Postmaster, Bergenfield, New Jersey, Defendants.**

**No. C-1016-59.**

United States District Court
D. New Jersey.

April 14, 1960.

---

Herbert S. Alterman, Passaic, N. J., Bass & Friend, New York City, of counsel by Solomon Friend, New York City, for plaintiff.

Chester A. Weidenburner, U. S. Atty., by Charles H. Hoens, Jr., Asst. U. S. Atty., Newark, N. J., for the Government.

WORTENDYKE, District Judge.

This case is before me on continued return of order to show cause why enforcement of post office fraud order No. 57004, made November 12, 1959, should not be preliminarily enjoined, and on defendant's cross-motion for summary judgment upon plaintiff's com-

plaint, which sought final injunction against such enforcement. During the oral argument the absence of any issue of material fact was conceded by both parties, and the motions were treated as cross-motions for summary judgment. Jurisdiction in this Court is conferred by 5 U.S.C.A. § 1009. See Cadillac Pub. Co. Inc. v. Summerfield, 1955, 97 U.S.App.D.C. 14, 227 F.2d 29, certiorari denied 1955, 350 U.S. 901, 76 S.Ct. 179, 100 L.Ed. 791. The administrative complaint which evoked the fraud order here under review was filed and hearings thereon held in accordance with 39 U.S.C.A. §§ 259 and 732, and 5 U.S.C.A. §§ 1004 and 1006. This Court's power to review the fraud order is limited to the determination "whether there is substantial evidence in fact, as distinguished from opinion, to support the order." Jarvis v. Shackelton Inhaler Co., 6 Cir., 1943, 136 F.2d 116, 119. See also Pinkus v. Reilly, D.C.N.J.1947, 71 F. Supp. 993, affirmed 3 Cir., 1948, 170 F.2d 786, affirmed sub. nom. Reilly v. Pinkus, 1949, 338 U.S. 269, 70 S.Ct. 110, 94 L.Ed. 63.

The administrative proceedings in the Post Office Department were initiated by complaint of its General Counsel alleging that U. S. Health Club was obtaining remittances of money through the mails by means of false and fraudulent pretenses consisting of representations that the use of Health Club's products "Super-Coronaid" and "Choless", as directed by its advertising and labeling, will prevent or alleviate human heart disease by limiting or reducing the cholesterol level in the blood supply, and thus preventing arterial occlusion. In answer to that complaint Health Club denied that it produced, but admitted that it retailed, the products complained of, and denied knowledge or information sufficient to form a belief as to the falsity of the printed labeling material which accompanied the product when it was sold. That answer unqualifiedly

denied the charged fraudulent character of the respondent's claims respecting the product.

The only evidence before the Judicial Officer upon the issues of falsity and fraudulent intent is to be found in the testimony of Dr. Kenneth D. Campbell, a physician employed by the United States Food and Drug Administration with the title of Associate Medical Director of Drugs and Devices, and the written report, dated January 24, 1958, made by the same doctor to Post Office Inspector C. C. Garver, entitled "Report on All Diet Foods Distributors, Inc., 123 East 34th Street, New York, New York, distributing a product known as Super-Coronaid plus Choless as an allegedly effective means for preventing coronary thrombosis." The Hearing Examiner defined the questions presented as (1) whether the representations complained of are attributable to Health Club; (2) whether failure of respondent to admit or deny the charged falsity of the representations amounted to an admission of that charge under Section 201.8(c) of the Departmental Rules of Practice [1]; and (3) whether the representations, if imputable to respondent, are fraudulent. He concluded (1) that the claims made for the accused products were false; (2) that respondent had adopted as its own the representations advertised, Lehigh Zinc & Iron Co. v. Bamford, 150 U.S. 665, 14 S.Ct. 219, 37 L.Ed. 1215, and (3) that the representations were made with intent to deceive. This initial decision of the Hearing Examiner was affirmed by the Judicial Officer, who directed the issuance of the fraud order thereon.

Plaintiff did not admit the falsity of the representations complained of. Paragraph 4 of the departmental complaint charged that the representations recited were "false and fraudulent." The "First" paragraph of respondent's answer denies the accusation (set forth in the introductory paragraph of the complaint) that respondent "is

1. "(c) Any facts alleged in the complaint which are expressly admitted or not denied in the answer may be considered as proved, and no further evidence in respect of such facts need be adduced at the hearing."

now and has been obtaining remittances of money through the mails by means of false and fraudulent pretenses, representations and promises." While the "Third" paragraph of the answer denies knowledge or information sufficient to form a belief as to the allegations of paragraphs "3" and "4", with respect to the alleged representations contained in said written material and the truth or falsity of said material, it takes this position because, as it alleges, this respondent did not manufacture the product or prepare the advertising material. The asserted falsity of the accused representations is a conclusion of the pleader. It is not admitted either under the cited Departmental Rule or under F.R. Civ.P. 8(b) or (d), 28 U.S.C. See Marranzano v. Riggs National Bank, etc., 1950, 87 U.S.App.D.C. 195, 184 F.2d 349, 351. Falsity of the representations was one of the principal ultimate questions confronting the Hearing Examiner, and to this question almost exclusively the report and testimony of Dr. Campbell was relevant. I shall treat both questions—that of falsity and that of intent to deceive—as persisting for the purpose of this Court's determination whether there was substantial evidence below supportive of the administrative conclusions under review.

In his written report Dr. Campbell states that "the principal constituents of the Super-Coronaid plan to reduce the incidence of coronary artery disease are the so-called essential fatty acids—linoleic and linolenic—present in the Super-Coronaid tablets and liquid. Recent developments in the field of nutrition suggest that the administration of unsaturated fatty acids as present in the two Super-Coronaid products may have some value in decreasing the number of cases of coronary thrombosis in our population since apparently these dietary factors bring about some lowering of the cholesterol levels in the blood." He adds that the supporting data for the theory stated are fragmentary and in some instances conflicting, but that it has been demonstrated that middle-aged sufferers from coronary thrombosis have an elevated level of blood cholesterol which induces the belief that cholesterol may have been the direct cause of the attack. On the other hand, it is also recognized that both the condition and the disease may be manifestations of some unknown pathological process. He reports that "(e)xperimental studies in human subjects with a variety of oils have indicated that activity in relation to lowering the blood cholesterol levels is correlated with the degree of unsaturation of the component fatty acids." While the pathogenic mechanism and cause or causes of atherosclerosis are unknown, says Dr. Campbell, and it has not been demonstrated that dietary supplements of unsaturated fatty acids will be effective in reducing the cholesterol level of the blood "there are several prominent pharmaceutical firms making various types of unsaturated fatty acid dietary supplements for use by physicians and it appears that they are enjoying a measure of popularity and usage on the basis that, although details of the relationship are not understood, the serum cholesterol level and atherosclerosis in man are probably interrelated."

On March 18, 1959, the substance of Dr. Campbell's testimony before the Hearing Examiner, on direct examination, tended to indicate that the consensus of informed medical opinion impelled the conclusion that the representations made respecting the efficacy of respondent's products for the purposes stated in the labeling and advertising thereof, were false, and that his conclusion of their falsity was in conformity with the "universality of informed medical opinion" on the subject. Upon cross-examination, Dr. Campbell testified that the role of unsaturated fatty acids in the treatment or prevention of arteriosclerosis is under study, and that it appears that the addition of small amounts of unsaturated fatty acids (equivalent to the amount contained in the accused products) without any modification of the diet, would be ineffective in lowering the blood cholesterol level. The witness fur-

ther testified that unsaturated fatty acid preparations *are* used in the treatment and prevention of various heart conditions, including angina pectoris, but under the care of a physician. There is also indicated, in such cases, a diet modification to provide the requisite quantity of essential unsaturated fatty acids for combination with the cholesterol in the blood stream, whereby the cholesterol is kept in such form that it is not deposited on the lumen or lining of the blood vessels. Dr. Campbell adds, however, that such treatment is generally employed as a last resort because it has not yet been established as a uniformly reliable specific. He then concludes that the employment of unsaturated fatty acids is of no prophylactic or therapeutic value in atherosclerosis or heart conditions according to "a universality of medical opinion." The witness admitted, however, that a daily dosage of more than six grams of unsaturated fatty acids might be efficacious as a preventive of, although not as a cure for, arteriosclerosis.

In American School of Magnetic Healing v. McAnnulty, 1902, 187 U.S. 94, at page 104, 23 S.Ct. 33, at page 37, 47 L.Ed. 90, the Supreme Court used the following language in passing upon the sufficiency of a complaint for injunctive relief against a post office fraud order:

"Because the complainants might or did claim to be able to effect cures by reason of working upon and affecting the mental powers of the individual, and directing them towards the accomplishment of a cure of the disease under which he might be suffering, who can say that it is a fraud, or a false pretense or promise within the meaning of these statutes? * * * As the effectiveness of almost any particular treatment of disease is, to a more or less extent, a fruitful source of difference of opinion, even though the great majority may be of one way of thinking, the efficacy of any special method is certainly not a matter for the decision of the

Postmaster General within these statutes relative to fraud. Unless the question may be reduced to one of fact as distinguished from mere opinion, we think these statutes cannot be invoked for the purpose of stopping the delivery of mail matter."

The views expressed in the foregoing quoted language of Mr. Justice Peckham were referred to with approval by the same Court as recently as 1949, in Reilly v. Pinkus, 338 U.S. 269, 70 S.Ct. 110, 94 L.Ed. 63. At page 273, of 338 U.S. at page 113 of 70 S.Ct. the evidence in McAnnulty was characterized as being "no more than 'opinion' in a field where imperfect knowledge made proof 'as of an ordinary fact' impossible." In Reilly, despite the finding of conflicting medical opinion as to whether kelp or iodine is valueless as a weight reducer, the Supreme Court held that "the efficacy of the 'Reducing Plan' as a whole was misrepresented in respondent's advertising." Nevertheless, the Court refused to direct the enforcement of the fraud order under review because of the restrictions upon cross-examination imposed by the agency.

■■ We pass now to the final question, whether upon the evidence before the Hearing Examiner there was a reasonable basis for inference that the respondent intended to deceive by the representations which it made because of the absence of support for those representations in the "universality of scientific belief." While Dr. Campbell did testify that the efficacy of certain components of plaintiff's products for the purposes for which they were advertised was the subject of continuing experimentation, without conclusive results, it was his opinion that the use of the products in the dosage quantities prescribed by the advertising was without value, either prophylactic or therapeutic, in achieving the results held out for the products in the accompanying advertising. He based this opinion upon what he stated to be the consensus of informed medical opinion, and the univer-

sality of accepted scientific opinion. While I believe that the weight of the witness' opinions as expressed orally under oath was in some degree diluted by the substance of his previous written report, I am not permitted on this review to weigh the evidence before the Judicial Officer, but I must determine only whether his conclusions find support in substantial evidence before him. In United States Nature Products Corp. v. Schaffer, D.C.S.D.N.Y.1954, 125 F.Supp. 374, 379, the product under scrutiny was known as Numal, was composed of certain vitamins and other substances, and was advertised as an effective human-weight builder. The Court enjoined the enforcement of a post office fraud order upon the ground that the evidence presented administratively was insufficient to establish fraud and intent to deceive. The evidence there disclosed, at best from the administrative standpoint, a conflict of opinion respecting the efficacy of the product. The opinion distinguished Shaw v. Duncan, 10 Cir., 1952, 194 F.2d 779, where a fraud order was sustained because "the unqualified testimony of the government's medical witnesses was that the product was valueless from both a practical and scientific viewpoint." The product involved in the Shaw case was known as "Bloom Pills", advertised as a cure for acne and containing calcium, sulphur and charcoal. The Government's medical testimony in that case was uncontradicted that the ingredients of which the pills were composed had no curative value and their use had been discarded by the medical profession. Reilly v. Pinkus, 338 U.S. 269, 70 S.Ct. 110, 94 L.Ed. 63, originated in this Court as Pinkus v. Reilly, in 1947. In his opinion reported in D.C., 71 F.Supp. 993, Judge Meaney denied the Government's motion for summary judgment because he found that the fraud order resulted from a finding based on opinion evidence instead of evidence arising in fact, and cited McAnnulty, supra, and Jarvis v. Shackelton Inhaler Co., 6 Cir., 1943, 136 F.2d 116. The Jarvis case distinguished "substantial evidence in fact" from "opinion". At page 119, of 136 F.2d in Jarvis, Judge Hicks, speaking for the Court, pointed out that the power of a court of equity to review a post office fraud order is limited and that "(i)t extends no further than to determine whether there is substantial evidence in fact, as distinguished from opinion, to support the order. If there is, the case is foreclosed against appellee (producer). If there is not, it follows that appellee has suffered irreparable injury to its property rights." Citing McAnnulty, supra, and Public Clearing House v. Coyne, 1904, 194 U.S. 497, 24 S.Ct. 789, 48 L.Ed. 1092. Substantial evidence has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Consolidated Edison Co. of New York v. National Labor Relations Board, 1938, 305 U.S. 197, 229, 59 S.Ct. 206, 217, 83 L.Ed. 126. Substantial evidence "must be enough to justify, if the trial were to a jury, a refusal to direct a verdict." Capitol Wine & Spirit Corp. v. Berkshire, 2 Cir., 1945, 150 F.2d 619, 620, certiorari denied 1945, 327 U.S. 783, 66 S.Ct. 681, 90 L.Ed. 1010, citing National Labor Relations Board v. Columbian Enameling & Stamping Co., 1939, 306 U.S. 292, 59 S.Ct. 501, 83 L.Ed. 660.

Because the only evidence before the Judicial Officer was the opinion of Dr. Campbell that plaintiff's product was valueless for the purpose recommended in the dosages prescribed, I find that the fraud order issued by the Judicial Officer lacks the support of substantial evidence. Its enforcement must, therefore, be permanently enjoined. Plaintiff's motion is granted, and defendant's cross-motion is denied. Let an appropriate order be entered.