**PREMIER POULTRY CO. et al. v. WM. BORNSTEIN & SON, Inc.**

No. 634.

Municipal Court of Appeals for the District of Columbia.

Oct. 12, 1948.

Rehearing Denied Nov. 1, 1948.

I. H. Halpern, of Washington, D. C., for appellants.

David I. Absé, of Washington, D.C., for appellee.

Before CAYTON, Chief Judge, and HOOD and CLAGETT, Associate Judges.

CAYTON, Chief Judge.

Defendants have brought this case here for review of a judgment in replevin, awarding plaintiff possession of certain refrigerating equipment.

 The first error charged, and strongly urged on us by appellants, is the refusal of the trial judge to order the proceedings reported by one of the court's official shorthand reporters.

The record discloses that before the trial began "the attorney for the defendants requested an official shorthand reporter and the Court refused to request one to come in to take the testimony of the trial. The attorney for the defendants, Mr. Halpern, asked the Court to inquire as to whether an official shorthand reporter was available and the Court said that he would not inquire." The judge said he would give defendants an opportunity to engage a private shorthand reporter. The attorney then went out to telephone and when he returned told the judge that he had called three different reporters and that none of them were available. He then again requested the judge to secure an official reporter or at least to inquire whether any of them were available. The judge refused.

We cannot approve such action. At considerable expense to taxpayers Congress has provided four reporters who are employed by the court and paid out of public funds for the service of Municipal Court litigants. One of the reasons they were provided was to make reporters more generally available, and at less cost, for proceedings in the Municipal Court. Often these cases involve amounts so comparatively small as not to justify even the attendance charge made by private reporters. Another purpose was to preserve a full and accurate record of proceedings, not only for the parties but for the trial court and for this court, in preference to the less satisfactory form of narrative statement based on the memory of court and counsel and their notes. These objectives will be lost if trial judges, without inquiring into circumstances or reasons, refuse to call in one of the court's own reporters and even refuse to inquire whether one is available. It is not true, as contended by appellee, that this was a matter for the determination of the trial judge with "no qualifications or limitations." Rule 68(b) of the trial court provides:

"The use of one of the official court reporters at the request of any of the parties to a case, in any branch of the Court, shall be a matter for determination by the Trial Judge, *having in mind the nature of the case, the necessity or advisability of having an official transcript, and the availability of an official court reporter.*" (Emphasis supplied.)

It is plain that by making no inquiry as to "the nature of the case, the necessity or advisability of having an official transcript, and the availability of an official court reporter" the rule was ignored in this case. As it turned out the case was partly tried without a reporter and that part is presented to us by a narrative statement of proceedings. The remaining parts of the trial were reported by a private stenographer later engaged by defendants' counsel and are before us in the form of a stenographic transcript.

Fortunately the outcome of the case has not been affected and defendants have not been harmed by the judge's action except to the extent that the amount they have paid to the private reporter is greater than that which an official Municipal Court reporter would have charged. But this circumstance alone gives appellant no ground to complain, because, there being no rule on the subject, such expenditures are not taxable.[1]

The trial judge made written findings of fact and conclusions of law. He found that one Morris Troshinsky held himself out to plaintiff as engaged in the poultry business, trading as Premier Poultry Company; that plaintiff relying on such representations and the credit of Premier Poultry Company furnished the equipment in-

---

[1] Fraser v. Crounse, D.C.Mun.App., 47 A.2d 96.

volved in this suit; that Morris Troshinsky was in fact not in business at that time and did not intend to pay for the chattels and labor furnished to him by plaintiff; that Troshinsky had leased his premises to defendant Buttercup Farms, Incorporated, which was in possession of the chattels in suit and that said defendant had no right to them. The judge concluded that because Troshinsky had obtained the chattels fraudulently plaintiff was entitled to repossess them.

We think the decision cannot stand, because it has no support in the evidence.

We note that plaintiff first based its case on the theory that by reason of a custom of the trade it had the right to repossess these goods merely because they had not been paid for, and despite the fact that there had been no reservation of title by conditional sale agreement or otherwise. Plaintiff also urged that it was entitled to recover $573.52 as "damages" although the greater part of this amount represented charges for labor performed in repairing the refrigerating plant. (The equipment seized was appraised at only $60.) The trial court properly rejected this claim for "damages" and apparently also rejected plaintiff's original theory of recovery.

■■■ It was then that plaintiff advanced the theory of fraud which was later adopted as the basis of the judgment below. We recognize that one who has been induced by fraud to part with personal property may reclaim possession thereof in a replevin suit. This is the procedure which was followed a long time ago in Samaha v. Mason, 27 App.D.C. 470; also in John V. Farwell Co. v. Hilton, C.C.E.D.Wis., 84 F. 293, 39 L.R.A. 579; see also Williston on Contracts, Rev.Ed., § 1370 and cases cited in note 3. It has always been the law that if a buyer obtains by fraud the seller's assent to transfer ownership of goods the seller may sue for the value thereof or at his election may rescind and sue to regain title or possession.[2] And there is no doubt that replevin is a wholly proper procedural remedy to test the issue of the right to possession.[3]

■■■ But when a judgment in replevin is to be predicated on a charge of fraudulent misrepresentation such fraud must be proven. As we said in Rosenberg v. Howle, D.C.Mun.App., 56 A.2d 709, 710, "actionable fraud is the concealment of a fact which should have been disclosed, or is the representation of the existence of a material fact which did not exist. That representation must be positively made knowing it to be false, or recklessly and positively made without knowledge of its truth. The party to whom the representation is made must not only be warranted in accepting it, but he must actually accept it, and, relying on its truth, act as contemplated by the party making it." All these elements must be present in order to constitute fraud.

In this case the evidence showed that Troshinsky actually conducted a poultry business at the address involved until January 1947 under the trade name of Premier Poultry Company; that from that time until sometime in June he continued to do some poultry business there and left the name Premier Poultry Company on the front of the building. Early in August, so the trial judge found, he ceased altogether to do business for himself and from then on whatever poultry there was on the premises belonged to Buttercup Farms, Incorporated, to whom Troshinsky subleased the building sometime in August. During that same month Troshinsky went to work as a salesman and clerk for that company, but it was not until September that the Buttercup name was placed on the building. The equipment involved in the suit was actually installed by plaintiff on August 23, 1947.

The first negotiations between Troshinsky and plaintiff took place in June 1947, and it was then, if ever, that any representations were made that the equipment was being bought by Premier Poultry Company. As we read the evidence these representations could only be based on the fact that a representative of another company, in Troshinsky's presence telephoned to

---

2 Jack Mann Chevrolet Co. v. Associates Inv. Co., 6 Cir., 125 F.2d 778; Lowell v. Brown, 1 Cir., 284 F. 936; Campbell v. Mowrer, 97 Kan. 496, 155 P. 956; Joplin v. Carrier, 11 S.C. 327; Williston on Contracts, Rev.Ed., § 1523. See also Restatement, Contracts, § 489; 24 Am. Jur., Fraud and Deceit, § 203.

3 Jackson v. Goode, D.C.Mun.App. 49 A.2d 913.

plaintiff to order the work done and stated that he was calling from Premier Poultry Company. Subsequently bills were sent to Premier Poultry Company at the address in question and the real dispute about such bills was that they should have been presented to and paid by the company which had originally installed the refrigerating plant.

Thus we look in vain for any evidence to support the charge of fraud. Did Troshinsky make any representations concerning his own credit standing or that of Premier Poultry Company? Was there any evidence that the credit standing of the company was any better than his own personal standing? Did either he or the company have any worse credit standing after the equipment was installed than they had when it was ordered? Did it matter in either a legal or a practical way whether Troshinsky was still in business for himself or had become the lessor of a new firm on the premises? If there were misrepresentations did plaintiff rely on them to its detriment?

From the record it seems impossible to find an affirmative answer to any of these questions. We must therefore rule that the decision of the trial court was wrong and must be reversed.

Reversed.