ROYSTER v. EMPLOYMENT SECURITY COMMISSION.

1. UNEMPLOYMENT COMPENSATION—REVIEW OF DETERMINATIONS—DISPUTED ISSUE.

The term *disputed issue,* as used in provision of employment security act limiting time within which review may be had of a determination by the commission, refers to a contested issue or a matter in dispute between the employer and commission and does not embrace the voluntary making and acceptance of payments (CLS 1956, § 421.32a, as amended by PA 1957, No 311).

2. SAME—JURISDICTION OF COMMISSION TO MAKE REDETERMINATION—DISPUTED ISSUE.

The employment security commission had jurisdiction to make redetermination as to January 29, 1958, payment of unemployment benefit to plaintiff for week ending January 25th, where defendant employer on February 4, 1959, discovered its account had been charged for such benefit for week involved and had paid him $87.78 in wages for that week, notified the commission and sought a redetermination, since there was no disputed issue until the employer sought a redetermination (CLS 1956, §§ 421.21, 421.32a, as amended by PA 1957, No 311).

3. SAME—REDETERMINATION—GREAT WEIGHT OF THE EVIDENCE.

Redetermination of employment security commission, referee, and appeal board that plaintiff had made an intentional misrepresentation as to nonemployment during week which he had worked and received wages *held,* not against the great weight of the evidence and supported by the record (CLS 1956, § 421.62).

4. COSTS—CONSTRUCTION OF STATUTE—UNEMPLOYMENT COMPENSATION.

No costs are allowed on review of redetermination of employment security commission whereby plaintiff was found to have in-

---

REFERENCES FOR POINTS IN HEADNOTES

[1] 48 Am Jur, Social Security, Unemployment Insurance, and Retirement Funds §§ 46–50; 42 Am Jur, Public Administrative Law § 181.

[2, 3] 42 Am Jur, Public Administrative Law § 173 *et seq.*

[4] 14 Am Jur, Costs § 106.

tentionally misrepresented to claims clerk as to nonemploy-
ment during week which he had worked and received wages,
where the interpretation of a statute was involved (CLS 1956,
§§ 421.21, 421.32a, as amended by PA 1957, No 311, CLS 1956,
§ 421.62).

Appeal from Wayne; Gilmore (Horace W.), J.
Submitted January 5, 1962. (Docket No. 43, Calendar No. 49,070.) Decided May 17, 1962.

Certiorari by Turner Royster against Michigan
Employment Security Commission and Chrysler
Corporation to review and invalidate determination
canceling benefits and ordering repayment of sums
received, because of intentional misrepresentation
in application for unemployment compensation.
Judgment upholding determination. Plaintiff appeals. Affirmed.

*Rothe, Marston, Mazey, Sachs & O'Connell*
(*Jeanne Nunn,* of counsel), for plaintiff.

*A. William Rolf* (*Dickinson, Wright, McKean &*
*Cudlip,* of counsel), for defendant Chrysler Corporation.

*Frank J. Kelley,* Attorney General, *Joseph B.*
*Bilitzke,* Solicitor General, and *Francis W. Edwards,*
Assistant Attorney General, for defendant Commission.

Dethmers, J. Plaintiff was employed by defendant
Chrysler Corporation from 1950 to November 8,
1958. On Friday, January 10, 1958, he was sent
home at the end of his shift for an adjustment of
schedules. On the next Wednesday, January 15th,
he filed a claim for unemployment benefits to establish a benefit year commencing on January 12, 1958,
and ending January 10, 1959. He was recalled to
work on Monday, January 20th, and worked for 5
days that week, being sent home again at the end of

his shift on Saturday, January 25th. For that week's work Chrysler paid him wages of $87.78. He did not work the following week. On Wednesday, January 29th, he again reported to the employment security commission office, applying for a benefit check. He then received such check for $44 for the week ending January 25th. The previous week, ending January 18th, was credited to him as a waiting week. On the occasion of that call at the commission office on January 29th, plaintiff was interviewed by a claims clerk, who testified that he represented to her that he had done no work and received no wages for the 2 weeks ending January 18th and January 25th, respectively. At that time, he also signed a commission's ledger card stating that the last day on which he had worked was January 10, 1958. He also signed the benefit check under a statement certifying that he had done no work and received no wages for the week ending January 25, 1958. During the remainder of 1958 plaintiff was frequently out of work and received benefit checks for a total of $880.

On February 4, 1959, Chrysler discovered that its account had been charged for unemployment benefits for plaintiff for the week ending January 25, 1958, and that for that same week it had paid him $87.78 wages. It so notified the commission and sought a redetermination. Thereafter, on February 25, 1959, plaintiff signed a statement to the commission that:

"I did not work the week of 1/19 through 1/25/58 for I thought my vacation pay covered that wk. I did receive an unemployment benefit check for that week."

After investigation, the commission, on March 6, 1959, determined that plaintiff had intentionally failed to disclose his earnings for the week ending January 25, 1958, ordered his repayment of the $44

benefit received for that week, also canceled the uncharged credit weeks on his base period, as provided in section 62, subd b, of the compensation act,* and required repayment of the $880 benefits received thereon.

Plaintiff then signed a statement to the commission to the effect that he had been working every other week in January of 1958 and that when he made his claim for compensation on January 29, 1958, "I must have overlooked the fact that I had earned $87.78 during week ending 1–25–58 * * * I simply forgot that I had worked during week ending 1–25–58." Then, on March 18, 1959, he signed an appeal, stating, "I probably misunderstood the clerk at the time of the benefits rights interview." It further appears that he accurately reported other periods of employment and lay-offs during the remainder of 1958.

On March 16, 1959, the commission, on redetermination, affirmed its March 6th determination and order. This was affirmed by the referee on April, 16, 1959, by the appeal board on June 1, 1959, and by the circuit court, on certiorari, on August 18, 1959.

Plaintiff says the commission, referee and appeal board were without jurisdiction to issue a redetermination holding plaintiff ineligible more than 1 year after January 29, 1958, the date of original determination of eligibility.

CLS 1956, § 421.21, as amended by PA 1957, No 311 (Stat Ann 1960 Rev § 17.522), being section 21 of the act, provides in subdivision (a):

"The commission shall currently provide each employer with copies of the benefit checks charged against his rating account. Such copies shall show the name and social security account number of the payee, the amount paid, the date of issuance, the

* CLS 1956, § 421.62 (Stat Ann 1960 Rev § 17.566).—Reporter.

week of unemployment for which the check was issued, the name or account number of the chargeable employer, upon request a code designation of the place of employment by the chargeable employer, and such additional information as may be deemed pertinent, and such copies shall constitute a determination of the charge to the rating account. Such determination shall be final unless further proceedings are taken in accordance with section 32a of this act."

CLS 1956, § 421.32a, as amended by PA 1957, No 311 (Stat Ann 1960 Rev § 17.534[1]), being section 32a of the act, provides, in part:

"The commission shall upon application by an interested party filed within 15 days after the mailing of a notice of determination, or may upon its own motion within said period, review any determination and thereafter issue a redetermination affirming, modifying or reversing the prior determination and stating the reasons therefor. The commission shall promptly notify the interested parties of such redetermination which shall become final unless within 15 days after the mailing of a notice thereof an appeal is filed for a hearing on such redetermination before a referee in accordance with the provisions of section 33 of this act: Provided, That the commission may, for good cause, including any administrative clerical error, reconsider any prior determination or redetermination after the 15-day period has expired and issue a redetermination affirming, modifying or reversing the prior determination or redetermination, but no such reconsideration shall be made after 1 year from the date of mailing of the original determination on the disputed issue."

Plaintiff points out that under section 21a the commission's issuance and providing of a copy of benefit check to the employer constitutes a determination of the charge to the rating account, and that in the instant case this was mailed to Chrysler on

January 29, 1958, with respect to the week ending January 25, 1958. Then plaintiff stresses that section 32a limits to 1 year, after such mailing to the employer, the period within which a commission redetermination of eligibility may be made. Here it did not occur until after Chrysler's application therefor on February 4, 1959. At that time, says plaintiff, no jurisdiction longer remained in the commission to make a redetermination.

Chrysler replies, stressing the words "on the disputed issue" appearing in the section 32a sentence which provides "but no such reconsideration shall be made after 1 year from the date of mailing of the original determination *on the disputed issue.*" Chrysler says that the matter of plaintiff's intentional concealment of his earnings for the week ending January 25, 1958, is now the disputed issue but was not at issue at the time when the January 29, 1958, original determination of eligibility was made by giving him a benefit check for $44 and sending Chrysler a copy. Plaintiff responds that the issue, both at the time the original determination was made and after Chrysler's February 4, 1959, protest and request for redetermination, was whether plaintiff was eligible for benefits for the week ending January 25, 1958. To that, Chrysler says that if that view be adopted, then there is always a disputed issue at the time of original determination and issuance of a benefit check and mailing of copy of same to employer, and that, hence, the words "on the disputed issue" are useless and redundant in the statute, because use of the term "original determination" would have sufficed to fix the time for commencement of the 1-year limitation period, to which the modifying quoted words then would add nothing. So, says Chrysler, the presently disputed issue is whether plaintiff intentionally concealed his earnings for the week in question, and that it became the disputed

issue only after defendants' protest on February 4, 1959.

Chrysler's position seems supported in *Lee* v. *Employment Security Commission,* 346 Mich 171. As stated about that case in defendants' brief:

"There appellant employer had filed a commission report form overstating, through error, the number of his employees. On the basis of this report, the commission on January 2, 1952, determined that the employer employed a sufficient number of persons to make him liable for the unemployment insurance contributions. On March 26, 1953, 14 months after the original determination, the employer requested a redetermination of his liability claiming that the number of employees shown in his 1952 report had been incorrect. The commission refused to reconsider the 1952 determination because, the commission contended, the original determination had, under section 32a, become final when not appealed within 15 days. This Court (pages 178 and 179) emphatically rejected the commission's position:

" 'Section 32a also provides that the commission may reconsider a determination for good cause, provided it is made within 1 year from the date of mailing of the original determination on the *disputed issue.*' (Emphasis in original.)

" 'The words "disputed issue," as used in section 32a, refer to a contested issue or a matter in dispute between the employer and the commission. In such disputed matters relief must be requested within 15 days or within 1 year for good cause shown. In our opinion matters not in dispute, such as payments voluntarily made and accepted, do not fall within the restrictions of section 32a.' "

We hold that the commission had jurisdiction to make the redetermination when and as it did.

Was the appeal board finding of intentional misrepresentation on plaintiff's part about his earnings for the week in question contrary to the great weight

of the evidence? Plaintiff says it was based wholly upon the finding that a misrepresentation was made and the presumption that it was intentional. In support of his contention that his misrepresentation was not intentional, or proved to be such, he points (1) to the inexperience on the job of the claims examiner who testified to his misrepresentation and the unlikelihood that she would remember plaintiff's identity and statements a year later when she testified, and to the alleged vagueness of that clerk's testimony; (2) to the confusion that might have existed in plaintiff's mind because of his unemployment the week before the one in question for which he had not received compensation because it was credited as a waiting week in a new benefit year; (3) to his subsequent honesty in reporting later periods of work and lay-offs; and (4) to his testimony of his own good character.

Defendants urge the improbability of mistake and the irresistible conclusion of intentional misrepresentation by reason of the following: (1) that plaintiff's oral misrepresentation was made on the Wednesday immediately following the week in question when he must have remembered still that he had worked that entire previous week; (2) that at that same time he signed 2 certifications of nonemployment during that previous week; (3) that he then stated that he had also been out of work the week ending January 18, 1958, thus claiming 2 consecutive weeks of unemployment when, in fact, that was untrue; (4) that his written explanations of the misrepresentation when discovered over a year later, first as having resulted from confusion as to coverage of that week by vacation pay, then that he must have overlooked the fact that he had earned $87.78 for the previous week, then that he simply had forgotten about working that week and, finally, that he probably had misunderstood the claims clerk when

she had questioned him, all add up to something other than truthfulness.

At all events, from commission, to referee, to appeal board, the evidence was persuasive to them all of intentional misrepresentation. This the circuit court, on certiorari, found "is supported by the record and is not contrary to the great weight of the evidence." We agree.

Affirmed, without costs, the interpretation of a statute being involved.

CARR, C. J., and KELLY, BLACK, KAVANAGH, SOURIS, OTIS M. SMITH, and ADAMS, JJ., concurred.