BARNS, PAUL D., Associate Judge.
Petitioner Dawkins, 67 years of age, for the first time in his life filed a claim for unemployment compensation. The Examiner on February 23, 1962, disallowed the claim on the ground that claimant had not “sought work as required by the Unemployment Compensation Law.” Dawkins appealed to the Referee. Upon appeal the Referee modified the determination made by the Examiner and held that claimant was ineligible because (1) he voluntarily left his employment without good cause, and (2) because he made false and fraudulent representations for the purpose of obtaining benefits contrary to the law. Upon an appeal from the Referee to the Board of Review the Board affirmed the Referee and thereupon Dawkins brought these proceedings in certiorari seeking review of the Board’s action. We find error and grant certiorari.
From the record it is our conclusion that there is substantial competent evidence to support the Examiner’s finding that Daw- *154 kins had not sought work as required by the Unemployment Compensation Law; that the Referee and the Board erred in finding that Dawkins (1) voluntarily left his employment without good cause, and (2) that he had made fraudulent representations.
Facts.
Petitioner Dawkins was laid off employment on November 21, 1961, because of lack of business whereupon he made claim for unemployment compensation on November 29, 1961. Dawkins then applied to Broward Sales Co. for employment who advised him that because of the time of the year that prospects for earning a living were poor when working on a commission. Daw-kins had previous experience in selling storm panels and advised Broward that its opportunities were good if it could develop an improved storm panel. The result was that it was agreed that Dawkins would be allowed his expenses and that he would give such time to the project as he wished. Dawkins interviewed contractors, engineers and architects in an endeavor to develop an improved panel. Petitioner put in about 16 hours a week between December 1, 1961, and February 4, 1962. As Dawkins testified “I was trying to work up a job for myself.” Broward’s shop facilities were at his disposal.
There was no firm employment of Daw-kins; his time was his own; he received for his expenses $9.00 per week for four weeks in January 1962. On February 4, 1962, Broward Sales Co. advised Dawkins that it was terminating the arrangements regarding expenses, etc., but he could go to work on commission as a salesman. Dawkins did not accept but asked for a $100 as he “needed it.” He was paid the $100 and it was noted on the check, that it was an advance on commissions. Daw-kins was not employed as a salesman, but one previous sale was made by him and another sale resulted from his interviews in his endeavors to develop an improved storm panel. Neither had been processed as to Dawkins on the books of Broward Sales Co. at the time of taking testimony before the-referee on April 9, 1962; each transaction was an isolated one and outside Dawkins’ regular course of activities, and only incidental thereto.
From the foregoing facts it is evident that the $9.00 per week in December and the $25.00 per week paid in January were not paid or received as “wages” although the January payments were not for itemized expenditures; they were allowed as expenses and not wages. Since Dawkins did not accept the offer of Broward to go work on a commission basis, it cannot be properly held that he voluntarily left employment without cause within the scope of section 443.06(1) F.S.A.
The payment of $100 on February 4, 1962, was not declared in his signed report of February 7, 1962, to the agency but the claim taker was informed of it two days later when Dawkins reported to the claim taker and was interviewed in response to a call-in card. It is evident that Dawkins became nervous when the claim taker called to his attention that he failed to show or declare receipt of the $100 on February 4, 1962, on his report, submitted on February 7, 1962, to the effect that he had not earned and been paid any wages to previous week, but the claim taker noted that “he is an intelligent man and apparently still does not feel that it was necessary to report this money” [$100].
The Examiner found that Dawkins had not been available for work within the meaning of section 443.05(3) F.S.A., in that he had not been sufficiently diligent in seeking work as required. The Referee made' finding of fact supporting the Examiner but based his decision of ineligibility on different grounds. To be eligible for unemployment compensation under section 443.05(3) F.S., the claimant must be available for work and this requirement has been interpreted to mean that he must be actively-seeking work in the current of the labor market and that passive inaction does not. *155 equate “available.” Florida Industrial Commission v. Ciarlante, Fla., 84 So.2d 1, Teague v. Florida Industrial Commission, Fla. App., 104 So.2d 612. There is evidence that Dawkins did seek work, but it appears that until February 4, 1962, he was devoting his time in an endeavor to create a job with Broward and was not sufficiently “available” to make him eligible during such period.

False and Fraudulent Representations

Section 443.06(6) F.S., relating to unemployment compensation, provides that:
“An individual shall be disqualified for benefits:
“(6) For a period not to exceed one year from the date of the discovery by the commission of the making of any false or fraudulent representation for the purpose of obtaining benefits contrary to the provisions of this chapter, constituting a violation within the intent of § 443.22 hereof * *
Section 443.22(1) F.S., makes it a crime to “make a false statement or representation, knowing it to be false, or knowingly fails to disclose a material fact to obtain or increase any benefits or other payment under this chapter * * *.”
When the pseudo-employment of Daw-kins was terminated on February 4, 1962, he asked for $100 because he “needed it” and “Broward” noted on the check “advanced on commissions.” The Referee made a finding that it was “an advance on future commissions which he might earn.” Gordon J. Dickens, President of Broward, testified that “he had sold a couple of jobs and he’s got a commission coming on those but we haven’t paid him;” and that the commissions would be applied against the $100 advance. The exact amount of the commissions is not definitely shown. Dawkins testified that the $100 was to “pay for some of my expenses” over and above the $25 and $9.
The foregoing is a recapitulation of some of the circumstances that existed when Dawkins on February 7, 1962, advised the agency that he had not worked or been paid any wages during the week ending February 6, 1962. Quaere: For the purposes of applying the unemployment compensation law —had he worked? — had he been paid any wages ? — did he knowingly make a false and fraudulent representation ?
The false and fraudulent representations and the knowing concealment of material facts proscribed by sections 443.06(6) and 443.22(1) F.S., supra, are correlated to the element of fraud involved in the law applicable to claims or defenses based on fraud and deceit by false representations. In Allen v. United Zinc Co., 1912, 64 Fla. 171, 60 So. 182, involving a defense based on fraud and deceit the court held: “To constitute fraud, a misrepresentation must be of a specific material fact that is untrue and known to be so, and stated for the purpose of inducing another to act * * Of course to knowingly withhold a material fact would equate an affirmative false representation.
Derry et al. v. Peek (1889) 14 App.Cases 337, is a leading case in Anglo-American jurisprudence on the question of false and fraudulent representation when involved in an action of deceit. It was decided by the House of Lords, with five Lords sitting (as is customary), on an appeal to it from the Court of Appeal. We quote with approval from the opinion of Lord Herschell:
“I think it important that it should be borne in mind that such an action differs essentially from one brought to obtain rescission of a contract on the ground of misrepresentation of a material fact. The principles which govern the two actions differ widely. Where rescission is claimed it is only necessary to prove that there was misrepresentation; then, however honestly it may have been made, however free from blame the person who made it, the contract, having been obtained by misrepresentation, cannot stand. In an action of deceit, on the contrary, it is not *156 enough to establish misrepresentation alone; it is conceded on all hands that something more must be proved to cast liability upon the defendant, though it has been a matter of controversy what additional elements are requisite.
* ‡ * * *
“Having now drawn attention,, I believe, to all the cases having a material bearing upon the question under consideration, I proceed to state briefly the. conclusions to which I have been led. I think the authorities establish the following propositions: First, in order to sustain an action of deceit there must be proof of fraud, and nothing short of that will sufEce. Secondly, fraud is proved when it is shown that a false representation has been made (1) knowingly, or (2) without belief in its truth, or (3) recklessly, careless whether it be true or false. Although I have treated the second and third as distinct cases, I think the third is but an instance of the second, for one who makes a statement under such circumstances can have no real belief in the truth of what he states. To prevent a false statement being fraudulent there must, I think, always be an honest belief in its truth. And this probably covers the whole ground, for one who knowingly alleges that which is false has obviously no such honest belief. Thirdly, if fraud be proven, the motive of the person guilty of it is immaterial. It matters not that there was no intention to cheat or injure the person to whom the statement was made. * * *
“In my opinion making a false statement through want of care falls far short of, and is a very different thing from, fraud, and the same may be said of a false representation honestly believed though on insufficient grounds.
******
“At the same time I desire to say distinctly that when a false statement has been made the questions whether there were reasonable grounds for believing it, and what were the means of knowledge in the possession of the person making it, are most weighty matters for consideration. The ground upon which an alleged belief was founded is a most important test of its reality. I can conceive many cases where the fact that an alleged belief was destitute of all reasonable foundation would suffice of itself to convince the Court that it was not really entertained, and that the representation was a fraudulent one. So, too, although means of knowledge are, as was pointed out by Lord Blackburn in Brownlie v. Campbell, 5 App.Cas. p. 952, a very different thing from knowledge, if I thought that a person making a false statement had shut his eyes to the facts, or purposely abstained from inquiring into them I should hold that honest belief was absent and that he was just as fraudulent as if he had knowingly stated that which was false. * * *
“I quite admit that the statements of witnesses as to their belief are by no means to be accepted blindfold. The probabilities must be considered. Whenever it is necessary to arrive at a conclusion as to the state of mind of another person, and to determine whether his belief under given circumstances was such as he alleges, we can only do so by applying the standard of conduct which our own experience of the ways of men has enabled us to form; by asking ourselves whether a reasonable man would be likely under the circumstances so to believe.”
It is our conclusion that when, considering all the facts above recited and applying the principles of law above noted that the Referee erred in finding that Dawkins (1) voluntarily left his employment without good cause and (2) made false and fraudulent representations knowing them to be false for the purpose of obtaining benefits *157 contrary to law; and the Board of Review erred in affirming the Referee.
The writ of Certiorari is granted and the decision of the Board of Review is quashed.
SMITH, C. J., and KANNER, J., concur.