Cyril F. HEBERT

v.

STATE of Maine et al.

Supreme Judicial Court of Maine.

Aug. 2, 1974.

Murphy & Sayer, by Michael Sayer, Lisbon Falls, for plaintiff.

Merrill A. Tracey, Asst. Atty. Gen., Augusta, for defendant.

Before DUFRESNE, C. J., and WEATHERBEE, POMEROY, WERNICK, ARCHIBALD and DELAHANTY, JJ.

WERNICK, Justice.

This is an appeal from a Superior Court (Kennebec County) judgment, entered February 13, 1973, which sustained a decision of the Maine Employment Security Commission (in turn affirming a decision of its Appeal Tribunal) disqualifying the appellant, Cyril F. Hebert, for unemploy-

ment compensation benefits from September 26, 1971 until he shall have earned $400.00. The grounds of the disqualification were that Hebert had

" . . . made false statements or representations, knowing them to be false, or knowingly failed to disclose material facts in his application to obtain benefits . . . ." [1]

While this appeal has been pending, Emilien A. Levesque succeeded defendant, James C. Schoenthaler, as Chairman of the Maine Employment Security Commission. On motion duly made and granted Emilien A. Levesque has been substituted for James C. Schoenthaler as a party defendant.

We sustain Hebert's appeal.

## I

Hebert had been employed by Ellis Paperboard Prod. Inc., in Portland, Maine, for approximately four years until this employment was terminated in June of 1971. Thereafter, he was employed by the Sheraton Eastland Motor Hotel in Portland for a period of approximately two and one-half months ending as of the week of September 27, 1971.

At the end of February, 1971, Hebert ceased to work for Ellis Paperboard Prod. Inc., but returned to work in April of 1971 and continued to work for the Company until termination of his employment in June of 1971.

For his unemployment which commenced at the end of February 1971, Hebert, on March 23, 1971, filed a claim with the Maine Employment Security Commission for payment of unemployment compensa-

---

1. The disqualification imposed upon Hebert is claimed to derive from 26 M.R.S.A. § 1193, subd. 6 which provided at all times here relevant that:

"An individual shall be disqualified for benefits: For any week for which the deputy finds that the claimant made a false statement or representation knowing it to be false or knowingly fails to disclose a material fact in his application to obtain benefits and the disqualification shall continue until claimant shall have earned not less than $400 thereafter in subsequent employment. In addition, if the deputy finds that the claimant did in fact knowingly accept benefits to which he was not entitled, he shall find the claimant ineligible to receive any benefits for a further period of not less than 3 months nor more than one year . . . ."

tion benefits. Pursuant to the provisions of 26 M.R.S.A. § 1194, subd. 2 the claim was processed by a Deputy of the Commission who made a "determination of insured status" establishing that Hebert's claim was a "first" (or initial) claim for unemployment compensation for a "benefit year" fixed as March 21, 1971 to March 20, 1972.

On November 3, 1971 Hebert filed another claim for unemployment compensation benefits. To identify it as an additional claim during one "benefit year," this November 3, 1971 claim was designated in Commission nomenclature as an "additional initial" claim.

The Maine Employment Security Commission form which Hebert completed to constitute his November 3, 1971 "additional initial" claim is absent from the record before us. The record does disclose, however, that Hebert admitted that (1) the form asked questions concerning Hebert's "last" or "most recent" employment and (2) Hebert's answers to these questions failed to mention Hebert's employment with Eastland Motor Hotel subsequently to the termination of his employment with Ellis Paperboard Prod. Inc.

Among the reasons Hebert assigned for the omission were the following:

(1) "I'd worked there such a short time";

(2) ". . . the only place I'd worked for any substantial time was Ellis Paper. I'd worked there for almost four years . . .. So that's the thing I put down and I just—I don't know what—I just didn't think of Eastland or didn't think it would make any difference . . . Ellis Paper was the place I worked for four years, so what else—so what else was I going to put down";

(3) ". . . I filed a claim before I worked at Eastland. . . . [When Ellis Paperboard Prod. Inc. was] . . . the only place I

worked for any length of time . . . almost four years . . . so . . . that's the only thing I put down. . . .";

(4) ". . . There wasn't anything willful. . . . I put down what I thought . . . was doing right. . . . I wasn't working, so I wasn't trying to defraud anybody."

The record further shows that although Hebert had failed to mention in his written claim his employment with the Eastland Motor Hotel, he had made oral statements to the Employment Division of the Maine Employment Security Commission:

". . . I had worked for the Eastland and I believe it is on my work reg. card or should be."

After Hebert had filed his November 3, 1971 "additional initial" claim he was paid, and accepted, unemployment compensation benefits in the amount of $57.00 per week from the week ending November 6, 1971 to and including the week ending March 18, 1972.

On March 20, 1972 the initially established "benefit year" expired. To allow establishment of a new "benefit year" Hebert, on March 29, 1972, filed another claim for unemployment compensation benefits. Because this claim would initiate a new "benefit year", and notwithstanding that it concerned an unemployment which had been continuing from a prior "benefit year", the nomenclature of the Maine Employment Security Commission referred to Hebert's March 29, 1972 claim as a "new initial" claim.

The Maine Employment Security Commission form posing Commission questions which as answered by Hebert constituted his "new initial" claim of March 29, 1972 is not in the record. Here too, however, as in the case of Hebert's November 3, 1971 "additional initial" claim, the record shows that Hebert admitted that the form contained a question asking that he

"describe . . . work he has been doing the preceding 18 months",

and Hebert, in responding to the question, omitted mention of his employment with the Eastland Motor Hotel subsequently to his employment with Ellis Paperboard Prod. Inc. Hebert explained this omission in the same manner he explained the omission in his "additional initial" claim of November 3, 1971.

In the administrative processing of Hebert's March 29, 1972 "new initial" claim the computer operation in the central office of the Commission brought to light information that Hebert had earned $862.89 during the third quarter of the calendar year 1971. This led to further inquiry by Commission representatives which revealed Hebert's employment at the Eastland Motor Hotel for approximately two and one-half months ending as of the week of September 27, 1971.

The entire matter was thereupon placed in the hands of Commission Claims Investigator, Arnold W. Scott. On May 8, 1972 he rendered a "Deputy's Decision" concerning the

"continued claim filed by claimant [Cyril F. Hebert] for the week ending 11–6–71."

The decision disqualified Hebert for benefits from September 26, 1971 (the date of termination of Hebert's employment with the Eastland Motor Hotel) and until he has earned $400.00. The reason for the disqualification was that by listing in his application for benefits his employment with the Ellis Paperboard Prod. Inc. until June of 1971 and failing to mention his subsequent employment by Eastland Motor Hotel ending September 26, 1971, Hebert had

" . . . made false statements, knowing them to be false and . . . knowingly failed to disclose material

facts in . . . [his] application for unemployment benefits for . . . [said] week . . . ."

In addition, Deputy Scott ruled:

" . . . after you have earned the wages stipulated by law, because of the fact that you have knowingly accepted benefits to which you were not entitled, the further provisions of the law are imposed and you will be ineligible for further benefits for a period of 4 months, starting with the earliest date that you have earned the requalifying wages."

From Deputy Scott's decision Hebert filed a timely appeal to the Appeal Tribunal of the Maine Employment Security Commission.[2] He specified as one of his reasons for appeal:

"I did not show . . . employment at Eastland Motor Hotel because I did not realize I should have"

and, therefore,

"I do not feel that there was any willful misrepresentation involved in my application for benefits."

The Appeal Tribunal conducted a hearing on June 21, 1972. Claims Investigator Scott and Hebert testified to the matters hereinbefore stated. On July 5, 1972 the Appeal Tribunal rendered a decision which sustained that portion of Deputy Scott's decision disqualifying Hebert from benefits from September 26, 1971 and until he has earned $400.00 but revoked the Deputy's order that Hebert be held ineligible for benefits for a further four month period.

The Appeal Tribunal supported the disqualification it imposed upon Hebert by the following findings of fact: (1)

"When filing an additional initial claim for benefits on November 3, 1971, the claimant did not show his last employer,

---

2. The provisions governing appeals within the Maine Employment Security Commission as well as ultimately to the Courts are contained in 26 M.R.S.A. § 1194.

but entered the name of a concern where he had previously worked";

and (2)

"When he filed his new initial claim on March 29, 1972, he again omitted any reference to his last employment . . . ."

Hebert filed a timely appeal from the decision of the Appeal Tribunal to the Maine Employment Security Commission. Expressly disavowing intention to appeal

"that portion . . . [of the Appeal Tribunal's decision] which found that claimant did not knowingly accept benefits to which he was not entitled"

and which, accordingly, had revoked the Deputy's further four month suspension of benefits, Hebert confined his appeal to the Appeal Tribunal's disqualifying him for benefits "from September 26, 1971 and until he has earned $400.00."

The Commission granted Hebert's appeal but refused him a further evidentiary hearing. Reviewing the record as already made, the Commission, on August 8, 1972, affirmed the decision of the Appeal Tribunal. The Commission "adopted as the findings of fact of the Commission" the findings of fact made by the Appeal Tribunal. The Commission then concluded:

"It is the opinion of the Commission that the claimant made false statements or representations, knowing them to be false, or knowingly failed to disclose material facts in his application to obtain benefits, within the meaning of Section 1193-6 [1193, subd. 6] of the Employment Security Law."

Hebert appealed this decision of the Maine Employment Security Commission to the Superior Court (Kennebec County). On February 13, 1973 the Justice of the Superior Court sustained the decision of the Commission on the ground that:

"The record clearly indicates that the Petitioner did make a knowingly false statement which subjects him to the penalty imposed in accordance with Title 26, Section 1193, Subsection 6."

## II

We sustain Hebert's appeal because the Maine Employment Security Commission committed an error of law by wrongly interpreting the meaning of 26 M.R.S.A. § 1193, subd. 6; and the Justice of the Superior Court preserved this error in his affirmance of the Commission's decision.

The Commission arrived at its decision by an analysis summarized in the following propositions.

(1) When Hebert filed an "additional initial" claim for benefits on November 3, 1971 and a "new initial" claim on March 29, 1972, he did not show his "last" employer (Eastland Motor Hotel) but entered the name of a concern at which he had previously worked (Ellis Paperboard Prod. Inc.)—these being the express findings of fact made by the Appeal Tribunal and adopted by the Commission.

(2) On November 3, 1971 and March 29, 1972 Hebert was in fact *subjectively aware*—i.e., "knew" that he had been employed at Eastland Motor Hotel subsequently to the termination of his employment with Ellis Paperboard Prod. Inc.

(3) The Maine Employment Security Commission forms which as completed by Hebert on November 3, 1971 and March 29, 1972 constituted his applications for unemployment compensation benefits, *objectively* evaluated—i.e., as the average reasonable person would understand the words used,—instructed Hebert to list his "last" (most recent) employment.

(4) Since Hebert responded to this instruction by designating Ellis Paperboard Prod. Inc. rather than Eastland Motor Hotel, Hebert being subjectively aware that he had worked at Eastland Motor

Hotel after the termination of his employment with Ellis Paperboard Prod. Inc., he ". . . made a false statement or representation knowing it to be false or knowingly fail[ed] to disclose a material fact . . ." within the meaning of Section 1193, subd. 6.

The Commission's error of law derives from the premise contained in proposition (3) above:—the Commission's view that under Section 1193, subd. 6 a claimant is accountable on the basis of an *objective* assessment of the meaning of the questions posed by the Commission for answer by the claimant—i.e., the meaning which a reasonable person would assign to the language rather than that meaning which the *particular* claimant *in fact subjectively* understood to be the meaning.

As the English language is commonly used, an answer to a question is said to be "false", in contradistinction to being "wrong" or "inaccurate", when the person who answers subjectively intends deception. Webster's Seventh New Collegiate Dictionary (based on Webster's Third New International Dictionary) (1970 Ed.) states:

"'False' in nearly all its senses carries an implication of deceiving . . . ."

"'Wrong' implies usually no more than a simple negation of or deviation from rightness or correctness." (p. 300)

■ We are satisfied that in Section 1193, subd. 6 the Legislature intended precisely this common meaning importing a *fully subjective* approach to "falsity." The conclusion is buttressed by the Legislature's express requirements that the claimant must "know" that his statement is "false" and his "failure to disclose a material fact" must be "knowing."

■ Within the correct meaning of Section 1193, subd. 6, therefore, whether Hebert made a *"false* statement or representation *knowing* it to be *false* or *knowingly failed* to disclose a material fact" (emphasis supplied) depends not only on whether Hebert answered the question posed by the Commission with subjective awareness that he had in fact worked for the Eastland Motor Hotel after his employment with Ellis Paperboard Prod. Inc. had terminated but also, and equally critically, *on how Hebert in fact subjectively understood* the meaning of the words used in the Commission's question. Only after an evaluation of Hebert's subjective comprehension of the meaning of the question can a proper determination be made as to whether Hebert's answer was "knowingly false"—in the sense that in accordance with Hebert's own special understanding of the question, he was subjectively cognizant that his answer was contrary to fact, thereby to be a deception, a "lie."

■ Persistently throughout the evidence Hebert asserted that his actual subjective understanding of the meaning of the Commission's question was that he was being asked to inform the Commission of his most recent *substantial employment,* the last employment at which he had worked "for any substantial time." The Commission, however, refrained from reaching a decision concerning the credit it would give this testimony of Hebert. It omitted to make a finding of fact concerning whether or not Hebert subjectively understood the question in the manner he was claiming in his testimony. Instead, the Commission held such finding of fact *unnecessary, because irrelevant,* on the theory that Section 1193, subd. 6 rendered Hebert chargeable *objectively,* in terms of a reasonable person's understanding of the meaning of the question. By this interpretation the Commission committed error of law.[3]

---

3. We take occasion here to emphasize, as we stated in State v. Beale, Me., 299 A.2d 921, 925 (1973) in a similar context, that the understanding which "a person of ordinary intellectual capacity would have formed . . ." may be *evidence* utilizable by the fact-finder

The error was continued in the decision of the Justice of the Superior Court sustaining the Commission on the ground that:

"The record clearly indicates that the Petitioner did make a knowingly false statement . . . [within the meaning of] Title 26, Section 1193, Subsection 6."

█ 26 M.R.S.A. § 1194, subd. 9 mandates that the jurisdiction of the Superior Court in its appellate review of a decision of the Maine Employment Security Commission is ". . . confined to questions of law", and, therefore, the Justice of the Superior Court lacked jurisdiction to supply a finding of his own on the crucial issue of fact as to which the Commission had omitted to make a finding:—Hebert's actual subjective understanding of the meaning of the Commission's question.

to arrive at the particular claimant's actual subjective state of mind. As we further observed in State v. Gordon, Me., 321 A.2d 352 (1974) n. 4: "[That which serves as]

Accordingly, when the Justice of the Superior Court affirmed the Commission's conclusion as to Hebert's having made a "knowingly false statement", in legal effect he adopted the Commission's ruling of law that Hebert's subjective understanding of the question at issue was immaterial. In so concluding, the Justice of the Superior Court, like the Maine Employment Security Commission, committed error of law requiring reversal of the decision.

The entry is:

Appeal sustained.

The judgment of the Superior Court is vacated.

Case remanded to the Maine Employment Security Commission for further proceedings in accordance with this opinion.

All Justices concurring.

evidence, however, must be distinguished from the ultimate fact legally required to be proved by evidence."