Richard JACOBS, Petitioner,

v.

**DISTRICT UNEMPLOYMENT COMPENSATION BOARD, Respondent.**

No. 12028.

District of Columbia Court of Appeals.

Submitted Sept. 29, 1977.

Decided Jan. 19, 1978.

Richard Jacobs, pro se.

Robert J. Hallock, Washington, D. C., was on the brief for respondent.

Before KERN, HARRIS and FERREN, Associate Judges.

FERREN, Associate Judge:

Mr. Richard Jacobs has petitioned this court for review of an order by the District

Unemployment Compensation Board (the "Board") disqualifying him from receiving benefits for a period of seven months pursuant to § 19(e) of the District Unemployment Compensation Act (the "Act"), D.C. Code 1973, § 46–319(e).[1] The Board adopted the Appeals Examiner's conclusion that petitioner had "knowingly made false statements for the purpose of obtaining benefits for the compensable weeks ending 9/25/76 and 10/2/76 within the meaning of Section 19(e) of the Act."

Because of the Board's failure to apply the proper standard for judging whether a claimant had the requisite knowledge of the false statement under § 19(e), we remand the case for further proceedings.

### I.

Petitioner Jacobs acknowledges that the Board received interstate claim forms bearing his signature for the weeks ending September 25, 1976, and October 2, 1976, despite the fact that he was employed by a chemical firm as a consultant for part of the first week and all of the second week. On the basis of these two forms, Mr. Jacobs received Treasury checks of $287.88 and $431.82. After approximately three weeks with the chemical firm, Mr. Jacobs' employment was terminated, so he reapplied for unemployment benefits. He asserts that during the process of reapplication, he learned for the first time that he had not been entitled to the two most recent benefit checks he had received. It is uncontested that promptly thereafter he refunded the amounts received to the government.

The Board proceeded against Mr. Jacobs, seeking to disqualify him from receiving benefits for an appropriate period pursuant to § 19(e) of the Act. On December 20, 1976, the Claims Deputy issued a determination to Mr. Jacobs, ruling "that you have

knowingly and willfully withheld or misrepresented material facts in order to obtain benefits not due you." In support of this conclusion, the Deputy told Mr. Jacobs: "You were in fact employed by Sigma Chemical Co. and earned over your benefit amount each week" ending September 25, 1976, and October 2, 1976. "Your certification for those two weeks that you were not employed is *deemed* a willful misrepresentation of the facts." [Emphasis added.] The Deputy accordingly disqualified Mr. Jacobs from receiving benefits for a period of seven months, October 3, 1976, through April 30, 1977.

Mr. Jacobs appealed this determination. On February 8, 1977, a hearing took place under the interstate claims system, D.C. Code 1973, § 46–316, before an Appeals Examiner in St. Louis, Missouri. At that time Mr. Jacobs testified that for convenience he had filled out several weekly claim forms in advance (except for the names and dates of employers contacted); that in answering question 10—"did you work or earn wages of any kind?"—he had checked in advance the box "No" on each form; that he had earned wages from the chemical company for three days of the week ending September 25, 1976, but was not paid during that week; that he had completed and mailed the form for the week ending September 25, 1976, under the mistaken impression that he could apply for unemployment compensation for any week in which he had not *received* income from an employer; that he had placed on his dresser a completed claim form, in a stamped envelope, for the week ending October 2, 1976, to be mailed in case (but only in case) he had not yet received wages during that week; that he did receive wages on September 30, 1976, for his first week of work (ending September 25, 1976)

---

**1.** D.C.Code 1973, § 46–319(e), provides in pertinent part:

(e) Any person who the Board finds has made a false statement or representation knowing it to be false, or who knowingly fails to disclose a material fact to obtain or increase any benefit under this chapter may be disqualified for benefits for all or part of

the remainder of such benefit year and for a period of not more than one year commencing with the end of such benefit year. Such disqualification shall not affect benefits otherwise properly paid after the date of such fraud and prior to the date of the ruling of disqualification. . . . .

at the chemical company, but that unknown to him his wife mailed the envelope on his dresser containing the completed form for the week ending October 2; that she had done so despite the fact that he had not put the envelope on the spot where outgoing mail was normally placed on his dresser; that his wife had not told him about mailing the claim; and that as soon as he learned about the mistake, he reimbursed the government in full for the two checks he had received. Mr. Jacobs accordingly urged a finding that he had not knowingly made the two false statements, as alleged.

The Missouri Appeals Examiner sent a transcript of the hearing to the Board. The District of Columbia Appeals Examiner reviewed the transcript and, on February 23, 1977, affirmed the Claims Deputy's determination. On the question whether Mr. Jacobs had knowingly made false statements to obtain benefits, the Examiner concluded:

> It should be remembered that the claimant is a lawyer and not a person of marginal educational background; and his contention that he automatically and mistakenly pre-checked all the pertinent questions on the forms, would therefore be dismissed as being without merit. In addition, a reasonably prudent person receiving the sums of $287.00 and $431.00 for successive weeks of employment, would certainly give serious thought to the question whether he was 'unemployed' at all during this period. In summary, the Examiner finds that the claimant knowingly made false statements for the purpose of obtaining benefits for the compensable weeks ending 9/25/76 and 10/2/76, within the meaning of Section 19(e) of the Act.

On April 7, 1977, the Board issued its "final decision" affirming the Appeals Examiner's decision and adopting his findings.

Mr. Jacobs has petitioned this court for review pursuant to D.C.Code 1977 Supp., § 46–312.[2]

## II.

We are presented for the first time with the question of the standard the Board should apply in determining whether a person has violated § 19(e). Petitioner advocates the subjective standard announced by the Supreme Judicial Court of Maine in *Hebert v. State*, 323 A.2d 1 (Me.1974). There, in response to a question on the claim form about his most recent employer, the claimant failed to list the employer where he had worked most recently for two and one-half months; instead, he answered all questions by reference to his previous employer where he had worked for almost four years. Under language virtually identical to our § 19(e), the State of Maine's Employment Security Commission concluded that the claimant had knowingly made false statements to obtain benefits. The claimant had protested that he mistakenly had understood the claim form question to refer to "his most recent *substantial employment*, the last employment at which he had worked 'for any substantial time.'" *Id.* at 6 (emphasis in original). The Commission, however, "*objectively* evaluated" the matter; "*i. e.*, as the average reasonable person would understand the words used." *Id.* at 5 (emphasis in original). The Supreme Judicial Court reversed, holding that each case must be decided by reference to what "the *particular* claimant *in fact subjectively* understood to be the meaning" of the language used in the claim form. *Id.* at 6 (emphasis in original).

Petitioner Jacobs accordingly claims that his mistaken understanding that benefits were payable for weeks when income from employment was earned, but not yet received, coupled with his ignorance of his

---

**2.** D.C.Code 1977 Supp., § 46–312, provides for review of the Board's decision by the District of Columbia Court of Appeals in accordance with the District of Columbia Administrative Procedure Act, D.C.Code 1977 Supp., § 1–1501 *et seq. See Wallace v. District Unemployment Compensation Board*, D.C.App., 298 A.2d 885

(1972). Pursuant to § 1–1510, this court, in accordance with specified criteria, has "power to affirm, modify, or set aside the order or decision complained of, in whole or in part, and, if need be, to remand the case for further proceedings, as justice may require."

wife's mailing the claim for the second week, should exonerate him here.

The Board sidesteps this argument by simply saying that it is "strictly a question of fact" as to "whether Mr. Jacobs knowingly made false statements to obtain benefits," and that the court should not substitute its judgment for that of the Board, given the substantial evidence in the record against Mr. Jacobs.

As elaborated below, we agree with Mr. Jacobs that the standard to be applied is a subjective one.

### III.

■ Our analysis begins with the language of § 19(e). We conclude that the standard of knowledge by which the Board is to judge a claimant is the knowledge required for a finding of civil fraud. The very word "fraud," in fact, is used in the second sentence of § 19(e) itself to modify the actionable language. *See* note 1, *supra*.[3] The elements of a § 19(e) violation, moreover, essentially track the common law requirements for proving fraud:[4]

1. A false representation of a material fact (*i. e.*, "has made a false statement or representation," or "fails to disclose a material fact");

2. Knowledge of the falsity (*i. e.*, "knowing it to be false" or "knowingly fails to disclose . . .");

3. An intention to induce reliance (*i. e.*, "to obtain or increase any benefit . . ."); and

4. Action taken in reliance on the representation.[5]

■ Accordingly, the Board, in making a § 19(e) determination, must articulate the evidence with respect to each element of fraud, make a finding as to each, and state a conclusion as to the fraud alleged. Findings and conclusions that do less are essentially standardless, and thus do not meet the established criteria for administrative determinations. *Hill v. District Unemployment Compensation Board*, D.C.App., 279 A.2d 501, 502–03 (1971); *National Geographic Soc. v. District Unemployment Compensation Board*, 141 U.S.App.D.C. 313, 438 F.2d 154 (1970). *See Miller v. District of Columbia Comm'n on Human Rights*, D.C.App., 339 A.2d 715 (1975); *A.L.W., Inc. v. District of Columbia Bd. of Zoning Adjustment*, D.C.App., 338 A.2d 428 (1975); *Citizens Ass'n v. District of Columbia Alc. Bev. C. Bd.*, D.C.App., 316 A.2d 865, 866–67; *Brewington v. District of Columbia Bd. of App. & Rev.*, D.C.App., 299 A.2d 145 (1973); *Dietrich v. District of Columbia Board of Zoning Adjustment*, D.C.App., 293 A.2d 470, 473 (1972).

From the record it is clear that the Board made findings which satisfied requirements 1, 3, and 4. It found the required false representation (*i. e.*, the boxes were checked "No" in response to the question whether

---

3. This conclusion is reinforced by the immediately preceding subsection of the Act, D.C. Code 1973, § 46–319(d), giving the Board authority to require repayment of sums when "[a]ny person, who, by reason of his *fraud*, has received any sum as benefits under this chapter to which he is not entitled . . . ." [Emphasis added.]

4. This court has articulated these requirements as follows: " '[A]ctionable fraud is the concealment of a fact which should have been disclosed, or is the representation of the existence of a material fact which did not exist. That representation must be positively made knowing it to be false, or recklessly and positively made without knowledge of its truth. The party to whom the representation is made must not only be warranted in accepting it, but he must actually accept it, and relying on its truth,

act as contemplated by the party making it.' " *Premier Poultry Co. v. Wm. Bornstein & Son*, D.C.Mun.App., 61 A.2d 632, 634 (1948) [quoting *Rosenberg v. Howle*, D.C.Mun.App., 56 A.2d 709, 710 (1948)].

5. The language of § 19(e) does not make clear—and there has been no briefing of the question—whether the false statement or concealment "to obtain or increase any benefit" means that the Board must have relied by granting the benefit or increase, or instead that the claimant merely needs to have made a fraudulent attempt. In the present case, of course, there was such reliance; two checks were sent to Mr. Jacobs. We leave it to the Board, in the first instance (subject to appropriate review in this court), to interpret the nature and degree of reliance, if any, required under § 19(e) should that issue ever arise.

Mr. Jacobs had worked or earned wages). Mr. Jacobs, moreover, admitted his intention to induce reliance on the claim for the week ending September 25.[6] As to reliance itself (*see* note 5, *supra*), there is no dispute about the fact that two checks were issued to Mr. Jacobs based on the two claim forms in question.

■ This case turns, therefore, on the legal meaning and state of the record as to the second element of fraud: "knowledge of the falsity." This knowledge requirement is a subjective one; it relates to the particular individual charged with the fraud, not to a hypothetical reasonable person. "The fact that the misrepresentation is one that a man of ordinary care and intelligence in the maker's situation would have regarded as false is not enough to impose liability upon the maker for a fraudulent misrepresentation. . . ." Restatement (Second) of Torts § 526, Comment d (1977).

■ With this said, however, we should stress that the knowledge required for fraud does not necessarily mean actual knowledge of falsity; the scienter element is satisfied if the representation is " 'recklessly and positively made without knowledge of its truth.' " *Premier Poultry Co. v. Wm. Bornstein & Son*, D.C.Mun.App., 61 A.2d 632, 634 (1948) [quoting *Rosenberg v. Howle*, D.C.Mun.App., 56 A.2d 709, 710 (1948)]. As expressed in the Restatement (Second) of Torts § 526, Comment e (1977):

> e. In order that a misrepresentation may be fraudulent it is not necessary that the maker know the matter is not as represented. Indeed, it is not necessary that he should even believe this to be so. It is enough that being conscious that he has neither knowledge nor belief in the existence of the matter he chooses to assert it as a fact. Indeed, since knowledge implies a firm conviction, a misrepresentation of a fact so made as to assert

that the maker knows it, is fraudulent if he is conscious that he has merely a belief in its existence and recognizes that there is a chance, more or less great, that the fact may not be as it is represented. This is often expressed by saying that fraud is proved if it is shown that a false representation has been made without belief in its truth or recklessly, careless of whether it is true or false.

We next must consider, therefore, the Board's findings as to Mr. Jacobs' knowledge.

### IV.

The specific question is: did Mr. Jacobs "knowingly" falsify and submit claim forms for the weeks ending September 25 and October 2, 1976, or did he mistakenly believe, despite the language on the claim form, that he was entitled to apply for benefits for any week during which he did not actually receive compensation from work? (For the week ending October 2, there is the additional question whether Mr. Jacobs can be said to have intended to induce reliance by submitting the claim form allegedly mailed by his wife without his knowledge.)

■ Clearly, the Claims Deputy did not make the requisite findings; he merely *deemed* Mr. Jacobs' actions to be willful by virtue of the boxes checked improperly on the claim forms. The District of Columbia Appeals Examiner was more thorough, but his words reflected a good deal of the "deeming" quality of the Claims Deputy's approach. He appeared to say that because Mr. Jacobs was a well-educated lawyer his claim of mistake would "therefore" be without merit. He also specifically judged Mr. Jacobs by reference to one's expectations of "a reasonably prudent person"— language very close to an objective evaluation of the facts rather than an evaluation of the claimant's own subjective state of

---

**6.** Mr. Jacobs denied that intention with respect to the form for October 2, and the Board made no finding at all on that issue. It is unclear, therefore, whether the Board's seven-month disqualification of Mr. Jacobs relates to one or

both of the claim forms. When different circumstances are alleged with respect to each of the claim forms submitted, the Board should specify how each claim bears on the sanction imposed.

mind. We therefore must remand for a finding based on the proper standard.

In order to make a proper finding as to knowledge, the Appeals Examiner should carefully listen to the claimant's explanation as to why question 10—"did you work or earn wages of any kind?"—was answered incorrectly. But the Examiner also should inquire into other evidence that can be said to bear on a claimant's state of mind, such as the number of erroneous claims made, the care—or lack of care—with which the claimant completed each form, and whether the completed form itself is consistent with the claimant's entire story.[7] The Examiner also should consider the circumstances of the mailing or other delivery of the claim, as well as the reason for discovering the error.[8] In addition, the Examiner will want to evaluate the efforts the claimant made to correct the record and return the overpayment once the error was discovered, as well as all corroborative evidence and other aspects of the matter that bear on the plausibility and consistency of the claimant's explanation.[9] The Examiner should then evaluate the evidence and make a finding as to the claimant's state of mind at the time of submitting the claim.

We are aware that the subjective standard may raise a question of administrative feasibility because so often the Board's decision must be based primarily on whether a claimant's story is believable. Nothing we say, however, should be construed to preclude a finding that a claimant's story is inherently not credible, and that the objective facts surrounding the incident manifest the requisite intent to defraud. The Maine court in *Hebert v. State, supra,* observed "that the understanding which 'a person of ordinary intellectual capacity would have formed . . .' may be *evidence* utilizable by the fact-finder to arrive at the particular claimant's actual subjective state of mind." *Id.* at 6 n. 3 (emphasis in original). The Restatement (Second) of Torts § 526, Comment d (1977), summarizes the point clearly:

> d. The fact that the misrepresentation is one that a man of ordinary care and intelligence in the maker's situation would have recognized as false is not enough to impose liability upon the maker for a fraudulent misrepresentation under the rule stated in this Section, *but it is evidence from which his lack of honest belief may be inferred. So, too, it is a matter to be taken into account in determining the credibility of the defendant if he testifies that he believed his representation to be true.* [Emphasis added.]

Thus, the claimant's intellectual capacity is also an appropriate evidentiary factor in evaluating plausibility of the story. The

---

**7.** The Board points out in its brief that Mr. Jacobs' claim form for the week ending September 25, 1976, including the section on employer contacts, was "filled out in light blue ink like that of a ball point pen," whereas the form for the week ending October 2, 1976, including employer contacts, was "completed in heavy black ink like that of a felt tip pen." From that the Board's counsel argues that the forms were not completed at the same time, contrary to Mr. Jacobs' assertion. We agree that this kind of evidence is probative of the subjective intent issue.

**8.** Mr. Jacobs explained that his wife mailed his claim for the week ending October 2, 1976, without his knowledge, having taken the envelope from a spot on his dresser where out-going mail was not customarily placed. He testified that it was his "impression" that his wife had thrown it away. He apparently did not ask her about the missing envelope, for he testified that he did not learn about the error until

several weeks later when he applied once again for benefits. Given Mr. Jacobs' admitted awareness that, under no circumstances, could he claim benefits for a week in which he received wages, the Examiner would be entitled to evaluate, for purposes of determining Mr. Jacobs' actual knowledge and intent, the plausibility of his explanation as to why he did not learn about the error sooner. Relevant to this inquiry, in addition to Mr. Jacobs' failure to inquire of his wife, are questions about his failure to perceive the fact of "extra" payment from receipt of the checks themselves. He testified that he could not detect overpayment because the checks did not bear dates indicating the weeks to which they related. The Examiner did not effectively probe this area of testimony.

**9.** We note that Mr. Jacobs did not ask his wife to testify in connection with her role in this matter.

result will be a subjective evaluation of the claimant's state of mind at the time of the claim, such that some claimants who incorrectly answer question 10 will be found to have done so fraudulently while others may be exonerated.

The courts of other jurisdictions have not followed a consistent approach to the problem of interpreting statutes similar to § 19(e). Some expressly have found a scienter requirement and thus have insisted, as we do here, that the administrative agency focus on the mind set of the particular claimant accused of willful misrepresentation. *Hebert v. State, supra*; *Dawkins v. Florida Industrial Commission*, 155 So.2d 153 (Fla.App.1963); *Bunzl v. Lubin*, 1 A.D.2d 46, 146 N.Y.S.2d 770 (3d Dept. 1955). Others implicitly have utilized a subjective standard. *Industrial Commission v. Bennett*, 166 Colo. 101, 441 P.2d 648 (1968); *Royster v. Michigan Employment Security Commission*, 366 Mich. 415, 115 N.W.2d 106 (1962); *In re Galitzer*, 2 A.D.2d 923, 156 N.Y.S.2d 481 (3d Dept. 1956). More recently, however, the New York courts have come to disregard the standards for judging scienter—as the Board would have us do here—by simply holding that the issue of willfulness "is within the exclusive province of the board if supported by substantial evidence [citations omitted]." *Worms v. Catherwood*, 28 A.D.2d 1188, 1188–89, 284 N.Y.S.2d 636, 638 (3d Dept. 1967). *Accord, Petrinec v. Levine*, 42 A.D.2d 1022, 348 N.Y. S.2d 246 (3d Dept. 1973). In fact, some New York judges, out of an ultimate regard for administrative convenience, have gone so far as to uphold a finding of willfulness on the ground that claimants who "elect" not to disclose all the required information have "assumed the risk and the consequences therefrom." *Tiano v. Catherwood*, 27 A.D.2d 879, 277 N.Y.S.2d 950, 952 (3d Dept. 1967); *In re Hare*, 20 A.D.2d 733, 246 N.Y.S.2d 856, 857 (3d Dept. 1964).

■ We decline to permit such shortcut analysis. We hold that absent particularized findings of fraud with reference to the individual claimant, a denial of unemployment benefits under § 19(e) would be "arbi-trary, capricious, [and] an abuse of discretion." D.C.Code 1977 Supp., § 1–1510(3)(A).

V.

■ The fact that petitioner Jacobs presented all the evidence he had in support of the subjective standard does not obviate the need for a new hearing. Neither Appeals Examiner—in Missouri or in the District of Columbia—appears to have utilized the correct standard for making the § 19(e) determination; we cannot be assured that the hearing record contains enough data, based on all relevant questions and responses, from which the Board can make a proper conclusion as to fraud. Furthermore, because petitioner's credibility is so essential to the determination here, it is critical that the person who actually examines the claimant on behalf of the Board either make proposed findings with respect to the alleged fraud or supply sufficient evidentiary detail, including consideration of the claimant's and other witnesses' demeanors, for the Board to make such findings. *Simmons v. District Unemployment Compensation Board*, D.C.App., 292 A.2d 797, 800 n. 4 (1972). Unless the Board were to conduct the hearing itself, as ultimate decision-maker, it will not be in a position to evaluate demeanor evidence without the benefit of a reasonably precise report by a factfinder who observed and listened to the claimant with the proper § 19(e) standards in mind. *Id.* Accordingly, it is critical for interstate claims that the Board acquaint out-of-state Appeals Examiners (*i. e.*, hearing officers) with the legal standards and factfinding responsibilities that apply when the initial determination by a District of Columbia Claims Deputy indicates that fraud under § 19(e) is at issue.

*Remanded for further proceedings.*